This is a private nuisance action involving the use of real property.
Walter Rice, III is a private homeowner in Mobile County. His residential property borders property owned and utilized by defendant Merritt Oil Company (Merritt Oil), a Texaco fuel distributor, doing business on this location utilizing automated, self-service gasoline and diesel pumps. The other named defendant, Richard T. Merritt (Merritt) is vice-president of Merritt Oil and owns 50% of its stock.
The dispute primarily arises over the safety and fire code compliance of Merritt Oil's use of the property. Rice filed his complaint against Merritt, individually, and Merritt Oil (appellees), on February 7, 1986, alleging that the appellees' use of the property adjoining Rice's residential property created and maintained a private nuisance causing Rice inconvenience and danger which has interfered with the quiet enjoyment of his home, has substantially decreased its value, and has subjected him to constant fear of danger. Rice asked the trial court for $11,000 in actual damages claiming diminished value of his home, $500,000 for the interference with the use of his home caused by defendant's actions, $500,000 in punitive damages, and injunctive relief.
A jury trial followed. After all the evidence was presented, a directed verdict was granted dismissing Merritt as a party defendant. Merritt Oil was granted a directed verdict on the issue of wanton or malicious conduct. Also, the court charged the jury that they could not return a verdict for mental anguish.
A jury verdict was returned for Rice against Merritt Oil on the issue of private nuisance in the amount of $10,000 actual damages. The court then found Merritt Oil to be in violation of the State Fire Code and enjoined its operation without an attendant present, or alternatively, without the use of a court-approved alarm system in lieu of an attendant. From that judgment, Rice appeals.
Four issues are presented to this court for review: I. Did the trial court err in directing a verdict in favor of Merritt? II. Did the trial court err in granting a directed verdict on the issue of wanton or malicious conduct? III. Did the trial court err in refusing to allow the jury to consider damages for appellant's mental anguish? IV. Did the trial court err in ordering that appellees could install a court-approved alarm system in lieu of an attendant as required by the State Fire Code?
The following facts are undisputed: that the properties involved in this controversy are zoned "light industrial"; that appellant's residential use is a non-conforming use grandfathered in because it existed as a residence prior to the passing of the 1967 zoning ordinance; that no new residential construction had been allowed in the area for over 20 years; that appellant expended over $20,000 in 1984 remodeling the badly deteriorating home he owned; that in 1984, appellees purchased the lot adjoining appellant's home for the purpose of installing a card-activated, automated gas and diesel dispensing facility for use by its fleet customers; and that appellees' plans for such facility were permitted and approved by appropriate city officials prior to its construction and subsequent operation.
Appellant's contention that appellees' use of the property is a private nuisance includes, but is not limited to, his following complaints: customers come and go at all hours of the day and night, many who are drunk and disorderly, making loud noises, playing loud music, cursing, etc.; the motor vehicles patronizing the pumps loudly rattle and clamor and many either have no muffler, or inadequate systems, frequently causing vibrations and emitting foul and obnoxious exhaust fumes; many of the customers park around appellant's property and on the street in front of it, in such a manner that prevents appellant free access to his own home; the three-sided stalls which were utilized by appellees' patrons for rest rooms were offensive and odorous; appellees maintain inadequate safety devices and practices, including lack of an attendant on the premises; as a direct result of the hazards posed by appellees' unsafe use of the property, appellant's insurance *Page 510 
coverage for his home was cancelled by his insurance carrier and appellant is now unable to obtain homeowner's insurance; the value of appellant's property is greatly decreased because of the nuisance imposed by appellees; and appellees' actions have caused and are continuing to cause the appellant interference with the quiet enjoyment of his residence as well as mental anguish from fear of fire or explosion.
Appellees oppose appellant's contentions by providing evidence that the nature of the business and the plans for construction of the facility and subsequent use were approved by appropriate city authorities prior to construction. Appellees argue that appellant's residence, which fronts the Interstate 10 service road, is a non-conforming use of the light industrial zoning and that appellant knew this prior to making the poor financial decision to remodel the deteriorating old house and that the light industrial zoning is appropriate for appellees' use of the property. Appellees' testimony was that, during the years the facility has been in operation, there have been no police complaints of disturbances, no fires, or other significant problems. Appellees further testified to having done everything requested by the Mobile fire inspectors, except man the facility, which issue, appellees claim, was resolved by a waiver granted by the Mobile Board of Adjustment and Appeals in 1985.
 I.
The first issue addressed is the dismissal of Merritt as a party defendant.
Appellees' position is that a corporation is a distinct and separate entity from the individuals who compose it. Read NewsAgency, Inc. v. Moman, 383 So.2d 840 (Ala.Civ.App.), cert.denied, 383 So.2d 847 (Ala. 1980). Further, appellees contend that a corporation can conduct business only through its agencies. Read, supra.
In the case at bar, evidence was before the court that Merritt received requests from the appellant to abate the nuisance, received warnings regarding the hazards the facility created and made decisions in his capacity as an agent for Merritt Oil. In Cohen v. Williams, 294 Ala. 417, 318 So.2d 279
(Ala. 1975), our supreme court opined that determination is on a case-by-case basis when deciding personal liability for those in control of corporate activity.
In reviewing the record, this court finds that the trial court correctly dismissed Merritt as a party defendant and that part of the judgment is due to be affirmed.
 II.
Did the trial court err in granting a directed verdict on the issue of wanton or malicious conduct?
By granting the directed verdict, the trial court refused to allow the jury to consider punitive damages.
We note here that we are governed by the scintilla rule, as this action arose before the enactment of Act 87-184.
The supreme court has clarified the standard of review for directed verdict under the scintilla rule as follows:
 "A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214
(Ala. 1978). In considering a motion for directed verdict, the court must apply Rule 50(e), ARCP, under which 'a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark . . . or a scintilla in support of the theory of the complaint. . . .' Dixie Electric Company v. Maggio, 294 Ala. 411, 318 So.2d 274 (Ala. 1975).
 "In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (Ala. 1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977). Also, this Court's function in reviewing a motion for a directed verdict is to review the tendencies of the evidence *Page 511 
most favorably to the non-movant, regardless of a view we may have as to the weight of the evidence, and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Beloit Corp. v. Harrell, 339 So.2d 992 (Ala. 1976)."
Brown v. Turner, 497 So.2d 1119, 1119-20 (Ala. 1986), (quotingfrom Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala. 1981)).
It is well established that to recover punitive damages in a private nuisance action, one must show that the act or omission is wanton, malicious, or attended by circumstances of aggravation. Abbot v. Braswell, 289 Ala. 90, 265 So.2d 871
(1972). The record contains several conflicts in testimony regarding whether appellees operated the facility dangerously or whether they corrected any hazards promptly as they were made aware of them.
Our supreme court has held that what constitutes wanton misconduct depends on the facts of the case. Brown, supra.
There was evidence presented that appellant and Mobile city fire inspectors made several attempts to have appellees correct hazards caused by lack of fire extinguishers, padlocked cut-off valves, and failure to man the facility. A directed verdict is not proper and any question must go to the jury if the evidence furnishes even a scintilla supporting the complaint. DixieElectric, supra; Weatherly v. Hunter, 510 So.2d 151 (Ala. 1987). We conclude that a scintilla of evidence exists on the issue of wantonness. Whether appellees' actions were wanton or attended with circumstances of aggravation was a proper jury question. Abbot, supra. Therefore, we hold that the trial court erred by directing a verdict on the allegation of wantonness which precluded the jury from considering punitive damages.
 III.
Did the trial court err in refusing to allow the jury to consider damages for appellant's mental anguish?
Appellant's requested jury charge to allow mental anguish as an element of damages was not allowed by the trial court. However, appellees' requested jury charge to disallow mental anguish was given. Therefore, the jury was not allowed to consider mental anguish.
Appellant correctly asserts that mental anguish is compensable in a nuisance case without physical injury if the mental suffering inflicted is accompanied by malice, insult, inhumanity, or contumely. Gregath v. Bates, 359 So.2d 404
(Ala.Civ.App. 1978). Our review of the record as noted hereinabove reveals that appellant provided at least a scintilla of evidence as to mental anguish; therefore the trial court erred in denying his requested jury charge. Accordingly, this court concludes that the trial court erred in refusing to allow the jury to consider damages for mental anguish in this case.
 IV.
Did the trial court err in ordering that appellees could install a court-approved alarm system in lieu of an attendant as required by the State Fire Code?
Appellant contends that the trial court erred by ordering in the injunction that appellees could comply with the provisions of the State Fire Code, requiring an attendant to be present at a fuel dispensing facility that is open to the public, by installing a court-approved alarm system that would be "the substantial equivalent of an attendant."
The State Fire Code promulgated by statutory authority at § 36-19-9, Ala. Code 1975, has the force and effect of state law. Standard Oil Co. v. City of Gadsden, 263 F. Supp. 502
(N.D.Ala. 1967). A provision in the State Fire Code requires that there be an attendant at each facility dispensing flammable fuels which is open to the public. The trial court ruled that appellees' facility is "open to the public" within the meaning of the State Fire Code.
The trial court entered an injunction allowing the appellees to install a court-approved alarm system to substitute for the *Page 512 
human attendant required by the State Fire Code. Our review of the record indicates that such substitution is contrary to the evidence presented regarding the purpose of the human attendant. The uncontradicted testimony regarding the purpose for a human indicates that no alarm system could possibly be "a substantial equivalent of an attendant." This is due in part to the ability of a human attendant to observe and correct, almost immediately, hazard-creating activities such as dispensing of flammable liquids into hazardous containers, cleaning up accidental fuel spills, preventing customers from smoking, or doing other hazardous acts on the premises.
That part of the judgment allowing an alarm system to be the substantial equivalent of an attendant is in error and must be reversed.
As concerns issue I, we affirm. As to the remaining issues, we reverse this cause and remand for proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.
INGRAM, P.J., concurs.
RUSSELL, J., concurs in result.