The defendant appeals from a judgment enjoining it from trespassing on the plaintiffs' land and requiring it to remove all *Page 845 
water pipes and other materials that it had installed on the plaintiffs' land. The trial court stayed the injunction pending this appeal. The issues are whether the trial court lacked jurisdiction for failure of the plaintiffs to join indispensable parties and whether the court erred in holding that the defendant's actions had extinguished an easement on the plaintiffs' land.
The plaintiffs are the Vestaclaire Office Condominium Association, Inc. ("Vestaclaire"), and four individuals, Charles Smith, Laura Smith, Laurence Bannon, and Charlotte Bannon. The property that is the subject of this action ("the Vestaclaire property") is a lot with a building known as "the Vestaclaire Office Condominiums." The Smiths and the Bannons own condominium units within the building and, therefore, fractional shares of the common areas of the Vestaclaire property.
According to testimony at the hearing held by the trial court, Vestaclaire is responsible for the care, maintenance, and administration of the Vestaclaire property. The defendant, Byrd Companies, Inc. ("Byrd"), is the owner of land adjacent to the Vestaclaire property. The boundary line between the Byrd property and the Vestaclaire property is the center line for a 10-foot-wide easement for public utilities.
In his order, the trial judge described the arrangement of the land as follows:
 "Lot F is a corner lot bounded on the south by Kentucky Avenue and on the west by Montclaire Lane. [Vestaclaire owns Lot F.] On the north or northeast boundary is Lot G, which in turn is adjoined on its northeast boundary by five lots extended in an arc and numbered in descending order, 14 through 10, each lying northeast of the next adjacent lot. On the east boundary of Lot F, Lot G, and Lots 10 though 14, is a very large tract identified as Lot 15. [Byrd owns Lots G, 10 through 14, and 15.]
 "The plat of the survey of First Addition to Vestavia Hills Shopping Center is recorded in Map Book 45, Page 81, in the Probate Office of Jefferson County, Alabama, and shows on its face an easement labelled, '10 ft. easement for public utilities,' extending a width of an equal distance on each side of the boundary line between Lots F, G, and 10 through 14 on one side of the boundary line, and Lot 15 on the other side of the boundary line.
 "It is this ten foot easement extending five feet on each side of the boundary line between Lot F and Lot 15 which is the subject of the present controversy."
Byrd's property and the Vestaclaire property form an entire block surrounded by four streets. Thus, no other property is affected by the easement at issue. For several years, Byrd has operated a shopping complex on its land, using its seven lots as a single unit. A few months prior to the filing of this action, Byrd began renovation and remodeling of the shopping complex. As part of the renovation and remodeling, Byrd had a new building constructed. The building occupied Byrd's land up to a point one inch from the boundary line between the Vestaclaire property and Lot 15. Byrd's construction of the building on the five feet of the easement located on Byrd's property effectively prevented use of Byrd's land for installation of public utilities.
The trial judge's order described the situation as follows:
 "As owner of the land on both sides of the easement beginning with Lot G and proceeding through Lots 10 through 14, all of which have a common boundary with Lot 15, Byrd has effectively vacated the easement for all practical purposes by constructing buildings on the ten feet lying along the boundary line and indicated on the plat as reserved for public utilities.
 "In addition to eliminating the ten foot easement from Lot G proceeding northeasterly in an arc through Lots 10 through 14, Byrd has also closed off or eliminated five feet of the ten feet reserved for the easement between Lot F and Lot 15 by building on the five feet of the easement located on the Lot 15 side of the boundary line between Lot F and Lot 15.
 "It is the remaining five feet of the ten foot easement lying on the Lot F side of *Page 846 
the boundary line between Lot F and Lot 15 which is the subject of the present controversy."
To provide the new building with water, Byrd installed water pipes on the Vestaclaire land. After notifying Byrd that trespass would not be tolerated, the plaintiffs filed their complaint, requesting an injunction and damages for trespass. After a hearing, the trial court found that Byrd's construction of the building extinguished the easement for public utilities and granted the injunction. The trial court also stated in its order that the amount of damages due to Byrd's trespass would be determined following Byrd's removal of the water pipes from the Vestaclaire property.[1]
Byrd first argues that the injunction is void because of the plaintiffs' failure to join indispensable parties, namely, the other two owners of condominium units within the office building, James Chamg and the estate of Charles Estes.
As Byrd correctly points out, all owners of condominium units also own an undivided interest in the common elements of the condominium property, as set forth in the declaration of condominium ownership. Ala. Code 1975, § 35-8-6. Condominium property includes not only all of the property covered by the declaration, but also any easements, rights, and interests belonging to the land or intended for the benefit of the land. Ala. Code 1975, § 35-8-2(6). Chamg and the estate of Charles Estes are therefore owners of an undivided interest in the real estate and the easement involved. However, the plaintiffs' failure to join them in this action, prior to obtaining the injunction, does not render the injunction void.
Rule 19, Ala.R.Civ.P., provides for joinder of persons needed for just adjudication. Its purposes include the promotion of judicial efficiency and the final determination of litigation by including all parties directly interested in the controversy. Hooper v. Huey, 293 Ala. 63, 69, 300 So.2d 100,105 (1974), overruled on other grounds, Bardin v. Jones,371 So.2d 23 (Ala. 1979). Where the parties before the court adequately represent the absent parties' interests and the absent parties could easily intervene should they fear inadequate representation, no reason exists why the trial court could not grant meaningful relief to the parties before the court. Ross v. Luton, 456 So.2d 249, 257 (Ala. 1984). Also, joinder of the absent parties is not absolutely necessary where determination of the controversy will not result in a loss to the absent parties' interest or where the action does not seek a judgment against them. Morgan Plan Co. v. Bruce, 266 Ala. 494,497-98, 97 So.2d 805, 808 (1957). A defendant's delay and its self-serving purpose for raising the issue have also been held to be proper considerations in determining whether a judgment is proper in the absence of a particular party. J.R.McClenney Son, Inc. v. Reimer, 435 So.2d 50, 52 (Ala. 1983).See also, Geer Bros., Inc. v. Walker, 416 So.2d 1045, 1050
(Ala.Civ.App. 1982).
This Court has also held, however, that in cases where the final judgment will affect ownership of an interest in real property, all parties claiming an interest in the real property must be joined. Johnston v. White-Spunner, 342 So.2d 754, 759
(Ala. 1977). However, Johnston is not applicable to this case.Johnston involved a boundary line dispute within a subdivision, and the trial court's judgment in Johnston established the boundary line to properties owned by parties who were not before the court. This Court held that, because the effect of the trial court's judgment would be to determine the boundary lines of property owned by absent parties, the absent parties were indispensable and the judgment entered in their absence was void. In the present case, the trial court's judgment did not determine the boundary line between the Byrd and Vestaclaire properties. Rather, the court's judgment determined that Byrd's action had extinguished the private easement between the properties. *Page 847 
The issues in the hearing on the request for an injunction related to interests held in common by all of the Vestaclaire property owners, not to individualized interests or to damages to be awarded to them. Thus, Vestaclaire, the corporate entity managing the condominiums, sufficiently represented the absent owners' interests for purposes of the injunction. Furthermore, Byrd was aware of the ownership interests of Chamg and the estate of Charles Estes before the hearing on the injunction, but failed to raise any issue concerning their absence until this appeal. See, J.R. McClenney Son, Inc., supra; GeerBros., Inc., supra. For these reasons, we decline to hold the injunction void based on Byrd's argument that the absence of James Chamg and the estate of Charles Estes was a jurisdictional defect.[2]
Byrd's principal argument for overturning the injunction involves the issue of whether the easement for public utilities was extinguished by Byrd's use of the land in a manner inconsistent with the easement. Byrd argues that the disputed easement is a public easement and, as such, cannot be vacated, abandoned, or extinguished except through compliance with §35-2-53 or -54, Ala. Code 1975.
The disputed easement in this case is an easement "for public utilities." Whether the easement is "public" or "private" depends on the number and the character of the persons the easement is intended to benefit. This Court has stated that, for an easement to be a public easement, the dedication must be for the benefit of the public at large and that no public easement exists where the right of enjoyment is confined to a few individuals who are owners of the adjoining property.Trustees of Howard College v. McNabb, 288 Ala. 564, 572-73,263 So.2d 664, 671-72 (1972).
In this case, the disputed easement is a private easement. The only parties who could possibly benefit from the existence or use of the easement are the owners of the property subject to the easement. Because Byrd owns all of the lots other than the Vestaclaire property that were originally benefited by the easement, no third parties can be adversely affected by the judgment that Byrd has extinguished the easement. The disputed easement does not create a right in the general public to use the land for public utilities or otherwise. The language describing the easement as "for public utilities" is merely a limitation of the uses that the adjoining landowners may make of the easement.
In Trustees of Howard College v. McNabb, 288 Ala. 564, 574,263 So.2d 664, 673 (1972), this Court followed the general rule "that 'an easement in a particular building coupled with no interest in land, is extinguished by the destruction of the building,' " quoting Pizitz-Smolian Co-operative Stores v.Randolph, 221 Ala. 458, 465, 129 So. 26, 32 (1930). In Trusteesof Howard College, the disputed easement applied to a lake. The lake ceased to exist. The court applied the general rule and held that "[a]n easement granted for a particular purpose terminates as soon as such purpose ceases to exist, isabandoned, or is rendered impossible of accomplishment."288 Ala. at 574, 263 So.2d at 673 (citations omitted; emphasis added). This rule has been followed in other jurisdictions as well. See, Penn Bowling Recreation Center, Inc. v. Hot Shoppes,Inc., 179 F.2d 64 (D.C. Cir. 1949); Bricault v. Cavanaugh,261 Mich. 70, 245 N.W. 573 (1932); Polyzois v. Resnick,123 Neb. 663, 243 N.W. 864 (1932).
In Polyzois, a factually similar case, the Supreme Court of Nebraska held that "if the owner of [an] easement by his own act renders the use of the easement impossible, or himself obstructs it in a manner inconsistent with its further enjoyment, . . . the easement will be considered as abandoned."123 Neb. at 668, 243 N.W. at 866 (1932), quoting 19 C.J.Easements, § 167 at 950 (1920). In Polyzois, the plaintiffs owned land adjacent to the defendants' land. The boundary line between the plaintiffs' *Page 848 
land and the defendants' land served as the center line for a 10-foot-wide easement for a driveway. With knowledge of the easement, the defendants erected a one-story brick building that covered the defendants' entire property, including the five-foot portion of the easement on the defendants' property.
In reversing the judgment and holding in favor of the plaintiffs, the Supreme Court of Nebraska stated:
 "In the erection of their building, covering the west five feet of this driveway, they have not only seriously marred it, but have practically destroyed the use for which it was created to serve. In view of the circumstances here presented, the controlling principle appears to be that this private way is to be regarded as an entire thing, and when divided or extinguished in part by the hostile act of one of the parties, an extinguishment of the whole results. This rule has added force, when it is remembered that here the act of the defendants is a substantial destruction of the entirety, by rendering its enjoyment in the manner contemplated at its creation an utter impossibility.")
Polyzois, 123 Neb. at 667-68, 243 N.W. at 866. We find the reasoning of the Supreme Court of Nebraska persuasive. The facts of the present case are almost identical.
In the present case, the purpose of the easement was to permit installation of public utility fixtures within the 10-foot easement. Five feet of the easement was on Byrd's property and five feet of the easement was on the Vestaclaire property. The easement is terminated because Byrd's construction of the building to the edge of the Vestaclaire property and along the boundary between Lot 15 and Lots G and 10 through 14 operated as an abandonment of the easement,[3]
because the building's construction made use of Byrd's property for the accomplishment of the easement's purpose effectively impossible. By constructing its building to the very edge of Lot 15, Byrd has sought to impose the entire burden of the utilities easement on the plaintiffs' property. The trial court did not err in forbidding this inequitable result.
The judgment of the trial court is therefore affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] Although the injunction was not a final judgment, Byrd filed its notice of appeal within 14 days as provided for in Rule 4(a)(1)(A), Ala.R.App.P.
[2] If further proceedings are held for the determination of damages for trespass, and if Byrd moves for the absent parties to be joined, the trial court should probably order them to be joined.
[3] The plats and drawings in the record show utilities easements entering Byrd's property at several other points, so the abandonment of this easement does not deprive Byrd's property of access to utilities.