ALMON, Justice.
The defendant, the City of Hamilton Downtown Redevelopment Authority (“the Authority”), appeals from a summary judgment entered in favor of the plaintiff, Macon Gravlee, Jr. The plaintiff, claiming to own “an existing retail facility that is located within the downtown central business district” of Hamilton, Alabama, filed a complaint against the Authority, seeking a judgment declaring that the Authority had improperly authorized bonds to finance the Hamilton Heights Shopping Center (“the shopping center”), to be located on Highway 78 in Hamilton. The issues are whether the complaint should have been dismissed for failure to join the Hamilton city council as an indispensable party and whether the trial court erred in holding that the bonds were “null, void, and of no force and effect” because the shopping center did not lie within a “downtown development area” within the meaning of the Downtown Redevelopment Authorities Act, Ala.Code 1975, §§ 11-54A-1 through -24 (“the Act”). This case is the first to reach this Court calling for an interpretation or application of the Act.
By a resolution passed on October 9, 1990, the Hamilton city council approved the formation and incorporation of the Authority, as provided by § 11-54A-4, and also approved the Authority’s definition of the “downtown development area” as provided by § ll-54A-9(b). The latter section provides:
*392 “All projects of the authority shall be located wholly within the corporate limits of the city and shall be in the downtown development area, which shall be an area defined by the authority and approved by resolution of the governing body of the city.”
Section ll-54A-2(8) defines a “downtown development area” as “The downtown central business district of the city and shall include areas used predominantly for business and commercial purposes.”
The Authority defined the “downtown development area” of Hamilton as the area “encompass[ing] the area within the city limits of the City of Hamilton which is within a five-mile radius of the Marion County Courthouse.” The Hamilton city limits encompass 30 square miles, and the area constituting the “downtown development area,” as defined by the Authority, includes approximately 19.6 square miles of the area within the city limits.
In 1990 a real estate development company began investigating the possibility of developing a shopping center in Hamilton, and it was interested in a parcel of land located on Highway 78. The land had long been in a state of row crop cultivation, but had been lying uncultivated since 1982. The Authority purchased the land on which the shopping center would be built and, on April 3, 1991, authorized the issuance of bonds in the principal amount of $2,200,-000, to provide financing for the construction and improvement of the property. Pursuant to § 11-54A-13, the Authority published notice of its “resolution providing for the issuance of bonds”; also pursuant to that section, Gravlee brought this action within 30 days after the first publication of notice.
Section 11-54A-14 exempts from taxation
“The authority formed under this chapter, the property and income of the authority (whether used by it or leased to others), all bonds issued by the authority, the income from such bonds or from other sources, the interest and other profits from such bonds enuring to and received by the holders thereof, conveyances by and to the authority[,] and leases, mortgages and deeds of trust by and to the authority.”
The legislature expressed its intent in passing the Act both in the section of the Act that became § 11-54A-1 and in House Joint Resolution 482, Act 86-613.[1] Section 11-54A-1 provides:
“The revitalization and redevelopment of the central business district of any city in Alabama develops and promotes for the public good and general welfare trade, commerce, industry and employment opportunities and promotes the general welfare of the city and state by creating a climate favorable to the location of new industry, trade and commerce. Revitalization and redevelopment of such central business district by financing projects under the chapter will develop and promote for the public good and general welfare trade, commerce, industry and employment opportunities and will promote the general welfare of the city and state. It is therefore in the public interest and is vital to the public welfare of the people of Alabama, and it is hereby declared to be the public purpose of this chapter, to so revitalize and redevelop the central business district of any city in the state.”
H.J.R. 482 provides, in part:
“BE IT RESOLVED BY THE LEGISLATURE OF ALABAMA, BOTH HOUSES THEREOF CONCURRING, That it is the. intent of Act No. 85-683 that the downtown central business district ‘Downtown Development Area,’ as established by an Authority, shall be characterized by physical, economic and historic characteristics which make revitalization and redevelopment vital to-public welfare of the City and State.
“BE IT FURTHER RESOLVED, That the delineation of the Downtown Development Area shall be undertaken with *393 respect to the characteristics of the downtown central business district as:
“1. An established historic location for commerce, trade, business and industry of a city, OR as part of a contiguous downtown central business district within or adjacent to the historic location of commercial land uses, trade, business or industry;
“2. Showing evidence of physical deterioration of public and private property OR commercial economic decline characterized by disinvestment on the part of private property owners, tenants and businesses;
“3. Characterized in whole or in part by vacancy of land and buildings previously occupied by business OR subject to deterioration, decline or destruction of public or private property, as a result of economic, social or natural events and occurrences.”
The trial court held, based upon the evidence in the record and upon the judge’s personal observations of the shopping center and its location in relation to the central business district of Hamilton, that the shopping center was not “located within the downtown development area as set forth in the Act and as more specifically described in the Joint Resolution.” The trial court further noted that the proposed shopping center was located on unimproved farm land located more than one mile south of the downtown business district of Hamilton and that the shopping center would have “a negative impact on the downtown development area that the legislature intended to benefit by the Act.”[2]
The Authority argues that the trial court erred in denying its motion to dismiss the complaint for failure to join an indispensable party, the Hamilton city council. Rule 19, Ala.R.Civ.P., provides for the “joinder of persons needed for just adjudication.” The Authority argued in its motion that the complaint should be dismissed because the city council was not made a party within the 30-day period for bringing the action provided by § 11-54A-13. Alternatively, the Authority requested in its motion that the city council be made a party defendant. The Authority argues that, because the city council approved the delineation of the “downtown development area” as defined by the Authority, the city council is an indispensable party. The Authority argues that a judgment against it is in effect a judgment against the city council, because, by rendering a judgment against the Authority, the trial court rendered void the city council’s discretionary authority in approving the “downtown development area.”
Section ll-54A-9(a)(2) of the Act provides that an authority has the power to sue and be sued in its own name and to prosecute and defend any civil action in which the court has jurisdiction over the parties and over the subject matter. Furthermore, § 11-54A-15 states that a city will not be liable in any event:
“for the payment of the principal of or interest on any bonds of the authority or for the performance of any pledge, mortgage, obligation or agreement of any kind whatsoever which may be undertaken by the authority, and none of the bonds of the authority or any of its agreements or obligations shall be construed to constitute an indebtedness of the city within the meaning of any constitutional or statutory provision whatsoever.”
These two provisions of the Act make the Authority solely responsible for its own actions, and, therefore, there is no reason to require that the Hamilton city council be made a party to this action. See Ex parte Sand Mountain Bank, 414 So.2d 928 (Ala.1982). The mayor gave an affidavit in opposition to Gravlee’s motion for summary judgment, so the city was aware of the action and could have intervened had it so desired. Furthermore, it has not been shown that the city council has any interest in opposing the prayer for a declaration that the Authority improperly defined the “downtown development area” that is any different from the interest the Authority has in opposing that prayer. Thus, any *394 interest the city council has in this action is adequately represented by the Authority. See Byrd Companies v. Smith, 591 So.2d 844, 846 (Ala.1991). For the foregoing reasons, the judgment is not due to be reversed because of the fact that the city council was not made a party.
The Authority argues that the delineation of the “downtown development area” of Hamilton is solely within the discretion of the Authority, subject to the approval of the city council, as provided by the language of § ll-54A-9(b); that the Authority’s delineation does not violate the legislative intent set out in § 11-54A-1; and that its delineation does not violate the requirement set out in the definition of the “downtown development area” found in § ll-54A-2(8), that the downtown development area “shall include areas used predominantly for business and commercial purposes.”
To support this argument, the Authority offered in opposition to Gravlee’s motion for summary judgment the affidavits of the mayor of Hamilton and the chairman of the Authority. These affidavits stated that Highway 78 leading into the City of Hamilton was part of the contiguous business district of the city, because there were 59 businesses or other establishments located on Highway 78. Therefore, the Authority argues, the area where the shopping center would be located is an area used predominantly for business and commercial purposes, as required by the Act’s definition of the “downtown development area.”
The fallacy of the Authority’s argument is sufficiently shown by pointing out that it quotes only part of the definition of a “downtown development area” from § 11-54A-2(8). The entire definition reads[3]: “ ‘Downtown Development Area’ means the downtown central business district and shall include areas used predominately [sic] for business and commercial purposes.” (Emphasis added.) The Authority does not refer to the language before the word “and,” when it is that language that actually gives the definition: a “downtown development area” must be within “the downtown central business district” of a municipality. Instead, the Authority uses the language following the word “and” to make an argument that reaches too far. If we accept the Authority’s argument that it can include any area “used predominantly for business and commercial purposes,” then any business district within the city limits could constitute a “downtown development area” simply by an authority’s saying so. Furthermore, the Authority’s argument that its delineation does not violate the legislative intent expressed in § 11-54A-1 again ignores the language in that section regarding the “revitalization and redevelopment of the central business district.” Finally, its argument that § ll-54A-9(b) gives it unbridled discretion to define a downtown development area is refuted by the statutory limitations on that definition found in §§ 11-54A-1 and -2(8).
Gravlee offered in support of his motion for summary judgment the affidavit of Jack Loden, a registered land surveyor and a native of Hamilton. Loden stated that he had done considerable surveying in Marion County. He said that the original plat of the town of Hamilton consisted of 40 acres, the SE ¼ of the SE ¼ of Section 34, Township 10 South, Range 14 West. He stated that the shopping center is not within that 40 acres. He further testified that in the downtown business district, situated within the original 40-acre plat, there were currently 27 vacant business buildings. He stated that the shopping center was in fact located l-Vs miles south of the downtown business district and that the area lying south of the downtown business district and north of the shopping center was predominantly residential. Finally, Loden stated in his affidavit that the land on which the shopping center was built had been in a continuous state of row-crop cultivation for at least 40 years until 1982, and that since that time it had been lying fallow. Gravlee himself gave an affidavit, stating that the area where the shopping center was built is a thriving area charac *395 terized by the recent development, in the last 8-10 years, of many new businesses and other establishments.
As the affidavits submitted to the trial court show, there are 59 businesses and establishments along Highway 78, including restaurants, gasoline stations, schools, banks, videotape rental stores, pharmacies, and doctors’ and dentists’ offices. In contrast, however, there are 27 vacant buildings in the downtown area surrounding the Marion County Courthouse. This we find to be the precise sort of situation the legislature contemplated in enacting the Act. The legislature obviously intended to promote the redevelopment and revitalization of downtown central business districts that were once economically prosperous, but are in a state of decline and deterioration due to numerous reasons, one certainly being the development of shopping centers like the one in this case that is located in the outlying areas of the city.
We note that this deterioration or decline is one of the factors expressed in H.J.R. 482 as being within the legislative intent behind the Act, along with other factors such as “[a]n established historic location for commerce, trade, business and industry within a city.” The shopping center on Highway 78 was obviously not built in such an “established historic location.” The site itself was agricultural land until the development of the shopping center. Most of the businesses and other establishments along Highway 78 have come into existence only in the last 8 to 10 years, as compared to the Marion County Courthouse and the surrounding downtown central business district, which have been in existence for approximately 100 years.
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. In reviewing a trial court’s summary judgment, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts against the movant. Fincher v. Robinson Brothers Lincoln-Mercury, Inc., 583 So.2d 256 (Ala.1991). The materials submitted to the trial court clearly show that Gravlee was entitled to a summary judgment.
The bonds that the Act empowered an authority to authorize and issue, and the tax benefits that come with the issuance of such bonds, were not designed to develop projects located away from the central downtown business district, such as the shopping center in this case. These types of developments only provide more competition for the downtown area and further contribute to its decline; they certainly do not contribute to the “revitalization and redevelopment of the central business district,” § 11-54A-1.
The trial court properly held that the bonds authorized by the Authority in the present case were issued in violation of the Act and that they are null, void, and of no effect, because the Authority’s delineation of the “downtown development area” was not in accordance with the terms of the Act.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.

. We express no opinion as to the effect a 1986 joint resolution may have on the interpretation of a 1985 act, because we find no need to refer to H.J.R. 482 to decide this case. We simply note the existence of H.J.R. 482 because it has been cited by the parties and the trial court.

. We note that the shopping center has been completed and has opened for business.

. We take the definition from Act 85-683 rather than from the Code section. The meaning is clearer in the original, because the Code section omits the word "means."