[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1063 
William Standeffer, M.D., and his former wife, Kathryn Short Drew, sued Jamison, Money, Farmer Company, P.C. ("JMF"), and Charles F. Horton, alleging a negligence claim and other claims concerning the tax consequences of Standeffer's disability insurance payments. The negligence claim was based upon the alleged professional malpractice of Horton, an accountant with the JMF accounting firm. The trial court submitted the negligence claim to a jury, and the jury returned a verdict in favor of Standeffer and Drew, awarding them $415,000 in damages. The trial court denied JMF and Horton's motions for a remittitur, J.N.O.V., or new trial. JMF and Horton appeal from a judgment based upon the jury's verdict.
A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust.Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala. 1988). In addition, a judgment based upon a jury verdict and sustained by the denial of a motion for a new trial will not be reversed unless it is plainly and palpably wrong. Ashbee v.Brock, 510 So.2d 214 (Ala. 1987). Because the jury returned a verdict for Standeffer and Drew, any disputed questions of fact must be resolved in their favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. State Farm Auto. Ins. Co. v. Morris,612 So.2d 440, 443 (Ala. 1993). In short, in reviewing a judgment based upon a jury verdict, this Court must review the record in a light most favorable to the appellee. Continental Cas. Ins.Co. v. McDonald, 567 So.2d 1208, 1211 (Ala. 1990).
Viewed in the light most favorable to Standeffer and Drew,Continental Cas. Ins. Co., the record suggests the following:
Standeffer began practicing obstetrics and gynecology in Tuscaloosa in the mid-1960s. Horton, a certified public accountant employed by JMF, began preparing tax returns for Standeffer and Drew in 1967. In the early 1980s, Standeffer and other physicians formed OB-GYN Associates of Tuscaloosa, P.C. ("OB-GYN"). JMF provided its accounting services to OB-GYN, compiling financial statements and tax returns and conducting some bookkeeping.
Standeffer and the other OB-GYN doctors individually maintained disability policies, as well as an OB-GYN group disability insurance policy. At OB-GYN staff meetings the group disability insurance was discussed, and representatives of JMF, including Horton, attended the meetings. The doctors were informed that the income tax consequences of disability benefits are different, dependent upon the manner in which the insurance premiums are paid. If the doctors themselves pay the premiums, then the disability benefits, when issued, are considered nontaxable income. If OB-GYN pays the premiums for the doctors, then the benefits would be taxable income. OB-GYN decided that it would pay the premiums for the doctors.
In 1980, Standeffer began to experience osteoarthritis, which required surgery. Standeffer's health problems resumed in 1985, when severe pain in his back, shoulders, and neck led him to conclude that he would soon become unable to practice in his medical specialty. With this in mind, Standeffer became concerned about the taxability of disability benefits. According to Standeffer, it was during this period that he began to speak with Horton concerning the disability policies and their taxability. Standeffer stated:
 "A. I spoke to Mr. Horton sometime probably after the middle of the year in '85. . . . I wanted to be certain that everything was set up correctly. I talked to Mr. Horton and asked him what I should do, obviously should pay the premiums. He told me that as long as I paid the premiums myself and I paid the last premium that I would be — it would be tax-free.
". . . .
 "A. I wanted to be very careful, I knew nothing about the income tax code. I wanted an expert to give me whatever information I needed, and I was — would follow his advice to a T.
". . . .
 "I had . . . one or two discussions in '85, but in '86 a discussion with Mr. Horton *Page 1065 
saying that I intended to start paying all of these premiums. I wanted . . . him to assist me in this in that the premiums would come in to OB/GYN Associates. . . .
 "I also asked Mr. Horton to, as a safety net, be certain that [JMF] would look at the checks and would look at whatever accounting they got and be certain that one of these payments did not fall through, because I wanted to pay them all. I was beginning to, here again, have more and more [arthritis] problems."
The record indicates that, on individual disability insurance policies, the employee need only make the last premium payment before the disability for the insurance proceeds to be considered nontaxable. However, on group policies, such as the one utilized by OB-GYN, the employee must make the last three premium payments before the disability for the insurance proceeds to be nontaxable; this is known in tax parlance as the "three-year look-back rule." Premium payments are generally made yearly. Standeffer possessed individual policies and was also covered by the group policy established by OB-GYN.
Standeffer began to pay his own premiums on the policies. However, concerned that his associates were having their premiums paid by OB-GYN while he was paying for his own premiums, Standeffer questioned Horton about the tax consequences that would result if he received a salary increase from OB-GYN equal to the amount of premiums he was paying. Standeffer stated that Horton told him that, as long as he paid tax on the increase in salary, there would be no taxation problem with disability insurance payments. OB-GYN then raised Standeffer's salary by the amount of premiums he paid to his insurance carriers.
In early 1987, Standeffer became disabled and began to receive disability insurance payments. Standeffer stated that he suggested to Horton, who was preparing his 1987 tax returns, that he include the disability income as income on those returns; according to Standeffer, Horton "said that wasn't necessary." According to Standeffer, he discussed this same issue with Horton while Horton prepared his 1988, 1989, and 1990 returns, but on each occasion Horton stated that listing the income was not necessary.
In 1991, the IRS began to audit Standeffer's returns. In 1993, it found deficiencies in Standeffer's tax payments from 1988 through 1992, due to Standeffer's failure to pay tax on the disability income he had received during those years. The IRS found that OB-GYN's reimbursement of Standeffer's disability premiums made Standeffer's insurance proceeds taxable. It also noted that OB-GYN had previously made payments on Standeffer's personal policies. The IRS utilized the "three-year look-back rule" to discover the tax deficiencies. Standeffer owed approximately $375,000 in deficiencies and interest; the total liability was eventually negotiated down to $225,000. Standeffer paid approximately $22,500 in attorney fees during the audit. The record indicates that the State of Alabama Department of Revenue had a similar claim for taxes and interest and that that claim had not been fully prosecuted as of the time of the trial in this case.
Horton denied that Standeffer engaged his services to set up a disability insurance tax plan. Horton stated that, if he had been asked to create such a plan, he would have billed his client for hourly fees and costs incurred in its preparation. Horton testified that he spoke with Standeffer in 1985 about his disability insurance, but that he gave little advice on the subject to Standeffer. He said he could not recall whether he mentioned the three-year look-back rule, but he stated that he knew that, as of mid-1985, OB-GYN had made premium payments on all of Standeffer's policies. Horton further said that Standeffer told him that he was personally paying his insurance premiums and that he probably told Standeffer that the proceeds would be nontaxable if he paid the last premium before a disability. Another JMF accountant stated that he and Horton told Standeffer that the taxability issue on reimbursed premiums was a "gray area," but Standeffer stated that he "would not do anything that was a gray zone, had [he] been told that." *Page 1066 
JMF and Horton first argue that the Statute of Frauds bars Standeffer and Drew's action against them, because, they contend, the alleged agreement between Horton and Standeffer would have been oral and it could not have been accomplished within one year. Thus, they argue, that agreement would have been void under the Statute of Frauds.
The Alabama Statute of Frauds, Ala. Code 1975, § 8-9-2, provides:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
 "(1) Every agreement which, by its terms, is not to be performed within one year from the making thereof. . . ."
The Statute of Frauds is an affirmative defense against breach of contract actions. However, Standeffer and Drew withdrew their breach of contract claim before the case was submitted to the jury. Their negligence claim, alleging professional malpractice, was the sole claim presented to the jury. JMF and Horton raised the Statute of Frauds issue in their motions for directed verdict and in their J.N.O.V. motion. However, although JMF and Horton originally requested a jury instruction on the Statute of Frauds, they withdrew their request for that instruction. The jury was not charged on the Statute of Frauds affirmative defense.
This was a professional malpractice action, and the evidence of the underlying agreement between Standeffer and Horton served to provide a basis for that action; in other words, the evidence was produced to show that Horton undertook a duty and breached that duty in regard to Standeffer's disability insurance. Standeffer contended that Horton's ongoing discussions with him demonstrated that Horton, as his accountant, undertook a duty to aid him in a plan to prevent the taxation of his disability insurance benefits and that Horton breached that duty. Standeffer and Drew presented evidence creating factual issues concerning these allegations, and their evidence was sufficient to warrant the submission of those issues to the jury. Because there was no breach of contract claim submitted to the jury, the Statute of Frauds was not a proper affirmative defense. This Court squarely addressed this issue in Compton v. Alabama Power Co., 216 Ala. 558,114 So. 46 (1927), wherein it reviewed a negligence action arising from an oral agreement:
 "This action is not for the breach of a contract, but for the breach of a duty owed by defendant to plaintiff. The contract alleged in the complaint is a matter of inducement only. Its office is to show a relationship between the parties out of which the duty in question arose. [Citation omitted.]
 "The negligence charged is with respect to acts already done, and it is immaterial whether or not the contract contemplated their performance within a year. . . . Hence the plea of the statute of frauds is not a valid defense to the action. . . ."
216 Ala. at 560, 114 So. at 48. Therefore, under the circumstances of this case, we find no merit in JMF and Horton's arguments that the Statute of Frauds is a valid defense to Standeffer and Drew's action.
JMF and Horton next contend that Standeffer and Drew failed to prove the proximate causation of their injury or harm, and they contend that the damages awarded were speculative.
Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new and independent causes, produces an injury or harm and without which the injury or harm would not occur. Thetford v. City of Clanton,605 So.2d 835, 840 (Ala. 1992); Crowne Investments, Inc. v. Bryant,638 So.2d 873 (Ala. 1994). We hold that the jury was presented sufficient evidence for it to infer that, but for Horton's failure to properly advise Standeffer as to the taxation of his disability insurance payments, Standeffer and Drew's tax payments would not have contained the deficiencies discovered by the IRS. The jury could reasonably have found an agreement between Horton and Standeffer that Horton would advise and aid Standeffer in regard to the *Page 1067 
disability insurance policies and could reasonably have found that Horton was negligent in his actions concerning the policies and thereby proximately caused Standeffer and Drew's loss.
We further reject the argument that the jury made a speculative award of damages. It is true that damages may be awarded only where they are reasonably certain. Damages may not be based upon speculation. Industrial Chemical FiberglassCorp. v. Chandler, 547 So.2d 812 (Ala. 1988); see also AlabamaPower Co. v. Alabama Public Service Commission, 267 Ala. 474,103 So.2d 14 (1958). However, "[t]his does not mean that the plaintiff must prove damages to a mathematical certainty or measure them by a money standard. Rather, he must produce evidence tending to show the extent of damages as a matter of just and reasonable inference." C. Gamble, Alabama Law ofDamages § 7-1 (2d ed. 1988), as cited in Industrial Chemical, supra, at 820. The rule that one cannot recover uncertain damages relates to the nature of the damages, and not to their extent. If the damage or loss or harm suffered is certain, the fact that the extent is uncertain does not prevent a recovery.Story Parchment Co. v. Paterson Parchment Paper Co.,282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); see also Shook v.Vertagreen Credit Union, 460 So.2d 1343 (Ala.Civ.App. 1984). The evidence before the jury — including receipts relating to Standeffer's disability benefits and expert testimony indicating that the State of Alabama will levy state taxes in addition to the federal taxes the IRS has claimed — was sufficient to provide a reasonable basis for the damages award.
JMF and Horton next contend that the doctrine of equitable estoppel should bar Standeffer and Drew's recovery in this action. That doctrine applies where the person against whom it is asserted has communicated something in a misleading manner, with knowledge of the facts and with an intent that the communication be acted upon. The person asserting estoppel must have acted upon that communication and the evidence must indicate that that person would be harmed if the other person is permitted to assert a claim inconsistent with his conduct. See General Elec. Credit Corp. v. Strickland Div. of RebelLumber Co., 437 So.2d 1240 (Ala. 1983). JMF and Horton argue that Standeffer made misrepresentations concerning the payment of certain premiums on his disability policies. However, the jury heard the evidence concerning these alleged misrepresentations; it was instructed as to the defense of equitable estoppel; and it found that defense inapplicable to the facts of this case. Where the evidence suggesting an estoppel is susceptible of different reasonable inferences, the jury must determine whether the facts of the particular case should constitute an estoppel. Imperial Group, Ltd. v. LamarCorp., 347 So.2d 988 (Ala. 1977); Draughon v. General Fin.Credit Corp., 362 So.2d 880 (Ala. 1978). Because the evidence indicated that the facts concerning this issue were in dispute, the trial court correctly submitted the issue to the jury. We find no error.
JMF and Horton next argue that Nancy Standeffer, who is Standeffer's second and present wife, was an indispensable party to this action. She was listed as a taxpayer on Standeffer's 1992 tax return, but was not a party to this lawsuit. JMF and Horton failed to raise this issue at trial. However, this Court has stated that matters concerning Rule 19, Ala.R.Civ.P., and its joinder provisions may be raised for the first time on appeal or may be raised by this Court ex mero motu. J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala. 1981); see also Town of Dauphin Island v. Point Properties,Inc., 620 So.2d 602 (Ala. 1993).
Rule 19(a), Ala.R.Civ.P., provides in part that a person shall be joined as a party in an action if, in that person's absence, complete relief cannot be accorded among the parties. Assuming, without deciding, that Nancy Standeffer fits this criterion because of her interest in the 1992 tax return, we still must consider the provisions of Rule 19(b). Under Rule 19(b) the court must determine "whether in equity and good conscience" the action can proceed without that person. This question is particularly important when a judgment has already been rendered without the nonjoined party. When a *Page 1068 
judgment is rendered in the absence of a person who should have been joined under Rule 19(a), this Court, pursuant to Rule 19(b), must consider any prejudicial effect of that judgment on the absent person and on the parties before this Court. See 7 Charles A. Wright, Arthur R. Miller Mary Kay Kane,Federal Practice and Procedure § 1609, at 144 (1986) ("Once the trial on the merits has been concluded, [Rule 19(b) considerations] weigh heavily in favor of preserving the judgment of the trial court . . . and against dismissal unless there has been real prejudice to those not before the court.").
It appears that JMF and Horton are primarily concerned with possible future litigation by Nancy Standeffer. Where it is apparent that in raising the joinder issue a party is seeking only to protect itself and not to vicariously protect the absent party against a prejudicial judgment, this Court, in determining the possible prejudice to the party seeking relief, may properly consider that party's delay in seeking the joinder of the absent party. See Byrd Companies, Inc. v. Smith,591 So.2d 844 (Ala. 1991) ("A defendant's delay and its self-serving purpose for raising the issue have also been held to be proper considerations in determining whether a judgment is proper in the absence of a particular party."). These defendants' extended delay in raising the joinder issue must be considered as a factor weighing against their argument. Although JMF and Horton assert that they did not realize Nancy Standeffer's status on the 1992 tax return until after the trial, we note that JMF and Horton had prepared the 1992 tax return for Dr. Standeffer and his wife Nancy.
We further note that at no time has Nancy Standeffer attempted to join the litigation in this case. In Geer Bros.,Inc. v. Walker, 416 So.2d 1045 (Ala.Civ.App. 1982), the Court of Civil Appeals thoroughly addressed a similar issue where a bank had not joined an action, but had an interest in the action, within the meaning of Rule 19(a), because of a mortgage on a mobile home. That court stated:
 "Considering that the bank at no time in this action has attempted, in any way, to protect its interest in the mobile home and that the defendant seeks to make the bank a party solely to protect itself from a later suit by the bank and that the defendant did not raise this issue until after the trial had been completed, this court, in equity and good conscience, cannot conclude that the bank's absence is so prejudicial that a new trial is required."
416 So.2d at 1050.
Nancy Standeffer has never attempted to protect her interest in the subject matter of this case, or to join this action, either at trial level or at the appellate level. Furthermore, it appears clear that JMF and Horton, in complaining of the failure to join Nancy Standeffer, are seeking "solely to protect [themselves] from a later suit." Geer Bros., Inc., supra. The record indicates that the possible prejudice to JMF and Horton that may result from Nancy Standeffer's absence as a party is remote at best. Under these circumstances, we conclude that the failure to join Nancy Standeffer in the action is not a sufficient reason to reverse the trial court's judgment.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HOOPER, C.J., and SHORES and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result.