This court's no-opinion order of January 29, 1999, affirming the judgment of the trial court, is withdrawn, and this opinion is substituted therefor.
C. Dudley Pearson sued Hays Aviation, Inc., and Leon C. Seale, Jr., individually and doing business as Moundville Airport, seeking damages and injunctive relief. In his complaint, Pearson alleged claims of trespass, nuisance, negligence, wantonness, and conspiracy. All the claims *Page 1110 
related to his allegations that certain airplanes were taking off from the Moundville Airport and then flying low over his home.
Pearson and Hays Aviation, which operated an airplane used for skydiving, entered into a settlement agreement and Pearson dismissed Hays from the action. A trial was held as to Seale's liability. The trial court directed a verdict in favor of Seale on all claims except the nuisance claim. The jury returned a verdict in favor of Pearson on the nuisance claim, awarding him $23,000 in compensatory damages and $30,000 in punitive damages. The jury noted that it intended for $1,000 of its punitive award to be covered by Pearson's settlement with Hays, so that Seale would be liable for a total of $52,000. The trial court entered a judgment on the jury verdict. Seale appealed to the Alabama Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The evidence at trial tended to show the following. In 1989 Pearson bought land near Seale's private airstrip. In 1991, Seale applied to the Federal Aviation Administration and the Alabama Department of Aeronautics to operate a public airport at Moundville; as part of his application, Seale proposed to lengthen the runway at the airstrip by about 760 feet. The agencies approved his application and granted him a license to operate a public airport.
In 1996, Seale lengthened the runway by more than 1,000 feet, bringing the total length of the runway to 4,000 feet. The end of the runway is now about one-half mile from Pearson's house. Seale also relocated the runway so that it was 100 feet to the side of where it had been. Seale entered into an agreement with Hays Aviation allowing Hays Aviation to operate a skydiving airplane out of the Moundville Airport, and by the early summer of 1996 air traffic in and out of the airport had increased substantially.
The early summer of 1996 was also when Pearson said the low overflights first began over his home. He and other witnesses testified that the planes making the low overflights were a red and white Cessna airplane, a blue and white Cessna airplane, and a black skydiving airplane belonging to Hays. Several witnesses testified that the two Cessnas belonged to Seale. They reported seeing both of them in Seale's hangar. Seale acknowledged having a red and white Cessna and a blue and white Cessna, but, he said, such planes, with similar markings, were common. His stance throughout the case was essentially that Pearson could not prove that he was the pilot making the low overflights in the Cessnas.
Ross Sasser, an aviation expert and former FAA and National Transportation Safety Board investigator, testified that the planes taking off or landing at the Moundville Airport must have climbed to or descended to a minimum altitude of 500 feet when they are over Pearson's home. Witnesses testified that, based on the height of trees in the area, they estimated that the planes were flying at 50 to 150 feet over the Pearson home.
Pearson testified that he complained to Seale about the low overflights, explaining that his wife was seriously ill with a brain tumor. He said that Seale was sympathetic and that the low flights stopped for about two weeks. However, the flights began again and continued throughout the summer. Pearson said he complained to Seale twice more about the flights. Finally, Pearson asked his son, a lawyer, to write Seale a letter demanding an end to the low overflights.
The letter was written on September 3, 1996. On September 7 and 8, 1996, Seale made takeoffs and landings from about 8 a.m. until dusk, Pearson said, and the planes flew low over his house. Pearson again sent Seale a letter complaining about the low overflights. Seale responded, saying that he was trying to determine when a pilot would have to turn to avoid flying over Pearson's house. Seale admitted to flying over Pearson's home that weekend *Page 1111 
at an altitude of about 200 feet. At trial, he testified that there would be no reason why a plane taking off or landing at Moundville would have to be below 500 feet over Pearson's home. Pearson testified that low overflights continued over his house until he filed his complaint in this case.
Seale contends that the trial court erred in failing to grant his motion to dismiss the case on the ground that Pearson failed to join indispensable parties. Specifically, he argues, the FAA and the Alabama Department of Aeronautics were necessary parties to this action and the trial court should have determined that this action could not proceed in their absence. We note that the trial court did not explicitly rule on Seale's motion to dismiss.
 "Rule 19, [Ala.] R. Civ. P., provides a two-step process for the trial court to follow in determining whether a party is necessary or indispensable. First, the court must determine whether the absentee is one who should be joined if feasible under subdivision (a). If the court determines that the absentee should be joined but cannot be made a party, the provisions of (b) are used to determine whether an action can proceed in the absence of such a person."
Holland v. City of Alabaster, 566 So.2d 224, 226 (Ala. 1990) (citations omitted). Rule 19(a) reads in pertinent part as follows:
 "(a) Persons to Be Joined if Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."
The question whether a party is indispensable is to be decided based on the facts of each case. Holland, supra. Seale contends that the FAA and the State Department of Aeronautics must be joined because they are responsible for the rules and regulations governing airports. Because those rules and regulations are "at the root of this case," Seale says, the aeronautics agencies have an interest in the outcome of this case.
However, this case has nothing to do with the rules and regulations of those agencies. The issue was whether the low overflights constituted a nuisance. At trial there was no discussion about whether flight patterns or altitude requirements should be changed. In fact, part of Pearson's case was that Seale was flying over his home at an altitude below that required by federal regulations. In a letter to this court declining to file an amicus curiae brief, the assistant attorney general representing the Department of Aeronautics wrote that the Department had determined that this case was a private-nuisance case that "does not affect the public airspace regulated by this Department [of Aeronautics]." Seale does not explain or give examples of how this case would have any effect on FAA or Department of Aeronautics rules. We agree that this case is purely a matter between Pearson and Seale, and the trial court did not err in not requiring that the FAA and the Department of Aeronautics be joined as indispensable parties.
Seale also argues that the trial court erred in not granting his motion for a judgment as a matter of law, or a remittitur, or, in the alternative, a new trial. It appears that the basis for each request is that the verdict was against the great weight of the evidence.
 "A jury verdict is presumed to be correct and should not be reversed unless it is plainly and palpably wrong. Hinson *Page 1112 v. King, 603 So.2d 1104 (Ala.Civ.App. 1992). This presumption is strengthened by the trial court's denial of a post-judgment motion for a new trial. Id. This court must review the evidence most favorably to the prevailing party and must indulge all inferences that the jury was free to draw. Id."
White v. Searcy, 634 So.2d 577, 579 (Ala.Civ.App. 1994).
Several witnesses testified that planes were flying low over the Pearson home. Seale himself admitted to making low flights over the home in what he called an attempt to determine when planes must turn to avoid flying over the home. He also said that there was no reason why on other occasions planes would be flying as low as he was flying during his experiment. An aeronautics expert testified that there would be no reason for a plane to be flying so low over Pearson's house.
Conflicting testimony was presented as to whether the low-flying planes belonged to Seale or were being flown by Seale. Again, several witnesses testified that the Cessnas looked like those belonging to Seale. The witnesses had seen Seale's planes in a hangar at the airstrip.
Seale argued that no one proved the low-flying planes were his, and he suggested they might be planes owned by other people or "pipeline planes" — planes that flew along pipelines in the area. However, he offered no evidence to support his suggestions. In fact, there was evidence that the "pipeline planes" had "PIPELINE PLANE" painted on their undersides, but that the planes flying over Pearson's home did not have such a designation.
Seale also says that the evidence cannot support a nuisance claim because, he says, there is no evidence of continuity. However, Pearson presented undisputed evidence that the low overflights began in the early summer of 1996 and continued at least until he filed the complaint in this action in December 1996. Because the jury had evidence before it from which it could determine that Seale was flying the planes during that time, Seale's contention that there is no evidence of continuity is without merit.
From the evidence presented, the jury could reasonably have determined that the planes making the low overflights constituted a nuisance, that the planes were Seale's, and that he was piloting the planes when they made the low overflights. Substantial evidence supports the jury's verdict and the judgment entered on that verdict. Therefore, we cannot say that the trial court erred in denying Seale's motion for a judgment as a matter of law, or in denying Seale's alternative motion for a new trial.
Seale also contends that the evidence did not support an award of $23,000 in compensatory damages or $29,000 in punitive damages. The jury was instructed on the assessment of damages for diminished rental value of Pearson's property and for mental anguish. Seale argues that Pearson failed to prove $23,000 in compensable damage under either of those two theories.
Seale claims that any evidence pertaining to the diminished rental value of Pearson's property is based on speculation. He also complains that the only evidence regarding the value of Pearson's property is testimony from Pearson himself; however, a landowner can testify as to the value of his property, even if he is not an "expert." Wilkens v. Kaufman, 615 So.2d 613
(Ala.Civ.App. 1992).
Pearson testified that he had invested $225,000 in his property. He estimated the property's rental value for May 1996 through May 1997 at about $2,200 a month, based on a 10-year amortization schedule. Seale did not dispute that evidence. It is true that an award of damages cannot be based upon speculation. However, Pearson does not have to prove loss or damage "to a mathematical certainty or measure [damages] by a money standard."Jamison, Money, Farmer Co. v. Standeffer, 678 So.2d 1061, 1067
(Ala. 1996). *Page 1113 
"Rather, he must produce evidence tending to show the extent" of the damage or loss he has suffered, and thus the proper amount of damages, "as a matter of just and reasonable inference." Id. Pearson's testimony regarding his investment in the property and his estimation of its rental value was sufficient evidence on which the jury could base an award of damages. See,also, Drummond Co. v. Boshell, 641 So.2d 1240 (Ala. 1994).
As to damages awarded on the basis of mental anguish, Seale correctly points out that such damages can be awarded in a nuisance case only if the mental suffering inflicted is accompanied by malice, insult, inhumanity, or contumely. Rice v.Merritt, 549 So.2d 508 (Ala.Civ.App. 1989); Gregath v. Bates,359 So.2d 404 (Ala.Civ.App. 1978). Pearson presented evidence indicating that the low overflights continued over the course of several months; that he complained to Seale about the low overflights, but they persisted; that the low flights were not only irritating or bothersome but also frightened him; and that had had been scared that the low-flying planes would hit his house. Other witnesses also described Pearson's fear and agitation when the planes flew low over his house.
Sasser, the aviation expert, testified that the minimum altitude for planes taking off from, and landing at, the Moundville Airport would be 500 feet at the time they were over Pearson's home. He said that in his opinion, the low overflights occurred intentionally. Even Seale testified that planes did not have to be below 500 feet when flying over Pearson's house. Despite knowing that, Seale spent two entire days flying low over the Pearson home in what he said was an attempt to determine when a pilot would have to turn to avoid flying over Pearson's house.
Based on his explanation of the overflights for those two days, Seale contends that there is no evidence to support a finding of malicious conduct required for an award of damages for mental anguish. We disagree.
There was substantial evidence from which the jury could properly determine that the low flights were made with malice, insult, inhumanity, or contumely. Therefore, we cannot say that the evidence does not support an award of compensatory damages for mental anguish. See, Dockins v. Drummond Co., 706 So.2d 1235
(Ala.Civ.App. 1997).
By the same token, to recover punitive damages in a private-nuisance case, Pearson had to show that the low overflights were "wanton, malicious, or attended by circumstances of aggravation." Rice v. Merritt, 549 So.2d at 511. Seale makes no argument regarding the amount of punitive damages awarded, that is, he does not claim that the award of damages is excessive. He argues only that the evidence does not support an award of punitive damages. The same evidence from which the jury could have determined that the low overflights were made with malice, insult, inhumanity, or contumely would support a finding that they were made wantonly or maliciously, or were attended by circumstances of aggravation.
Out of an abundance of caution, we note that we would not find the award of $29,000 excessive. In BMW of North America,Inc. v. Gore, 517 U.S. 559 (1996), the United States Supreme Court set forth factors this court must consider when reviewing jury verdicts that award punitive damages. Those factors include (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of punitive damages awarded to the amount of actual or potential harm suffered by the plaintiff; and (3) a comparison of the amount of the jury's verdict with civil or criminal penalties (if any) that could be imposed under the law for comparable misconduct. Id.
As mentioned above, the jury awarded Pearson $23,000 in compensatory damages and $30,000 in punitive damages, intending *Page 1114 
that Seale be responsible for $29,000 of the punitive-damages award. We already have determined that Pearson presented substantial evidence to support a finding that the low flights were made with malice, insult, inhumanity, or contumely. Therefore, it is logical to assume that the jury determined Seale's conduct was reprehensible to at least some degree.
The ratio between the punitive damages for which the jury determined Seale is responsible and the compensatory damages awarded is 1.26:1. Based on the record before us, we cannot say that the ratio indicates an excessive award of punitive damages. Considering the BMW factors, we cannot say that the jury awarded an excessive amount as punitive damages.
The judgment is due to be affirmed.
ORDER OF JANUARY 29, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; 39(K) MOTION DENIED; JUDGMENT AFFIRMED.
Robertson, P.J., and Yates and Crawley, JJ., concur.
Thompson, J., concurs in the result.