In an action to resolve a boundary line dispute between owners of contiguous lots in a subdivision of the N 1/2 of SE 1/4, Sec. 29, Twp. 4 S, Rg. 2 W, Mobile County, Alabama, the trial court found there was excess acreage in Section 29 but only apportioned an aliquot portion to the lots in thesubdivision owned by the litigants, and other lot owners in that subdivision who were not parties to the action. Although there are other issues raised by this appeal, this is the controlling one. The trial court was in error, therefore we reverse and remand.
Plaintiffs, Blacksher White-Spunner, J.F. Pate, Jr., and Ross M. Diamond, Jr., filed a statutory non-jury action under Tit. 47, § 3 of the Code to establish and define a boundary line between their Blocks (lots) 3 and 14 of Shoub's Second Addition to Mobile Heights and Block (lot) 2 owned by defendants Robert T. and Verlene Johnston.
The complaint alleged existence of a dispute over the correct location of the boundary between the lots of plaintiffs and that of defendants; that a survey made by one Rester, 18 June 1974, revised 29 May 1975, showed the true boundary between the lots; that an existing roadway was 75 feet off its center line, and the Johnstons were encroaching upon plaintiffs' property.
The relief requested was: establishment and definition of the boundary line according to the Rester survey; removal of a dirt driveway and signs on property claimed by plaintiffs and to order the Johnstons to cease, and desist from, using any of the property claimed by White-Spunner, et al.
Answer of the Johnstons denied the boundary was as located by the Rester survey and claimed portions of lots 3 and 14 by adverse possession.
The case was tried without a jury, after which, in an amended decree, the trial court held: the true boundary line is shown by the Rester survey of 18 June 1974, revised 29 May 1975; the Johnstons' driveway encroaches upon Blocks (lots) 2 [sic] and 14 of White-Spunner, et al; there is excess acreage in Section 29, properly allocated as set out in plaintiffs' exhibits 5 and 6 attached to, and incorporated in, the decree by reference; the true and correct location of Satsuma Avenue (Johnston Lane) is as set out in the Rester survey; that Rester should place, in conformity with his revised survey, permanent "judicial landmarks" at points marking the NE corner of Block (lot) 3, NW corner of Block (lot) 2, SE corner of Block (lot) 3, SW corner of Block (lot) 2 and the SE corner of Block (lot) 14, and the Johnstons should cease and desist from using the White-Spunner, et al, property in any fashion.
The Johnstons appeal from the amended final decree, urging error: in denial of their claim as to location of the boundary; relocation of Johnston Lane (Satsuma Ave.); in denial of their claim to portions of Blocks (lots) 3 and 14 by adverse possession, and improper apportionment of excess acreage and absence of indispensable parties.
The parcels of land involved in this dispute are part of Shoub's Second Addition to Mobile Heights, an eighty acre tract consisting of the N 1/2 of SE 1/4 of Sec. 29, Twp. 4 S, Rg. 2 W, Mobile County. The subdivision is comprised of 16 Blocks (lots) of approximately 5 acres each. Blacksher White-Spunner, J.F. Pate, Jr., and Ross Diamond, Jr., own Blocks (lots) 3 and 14. Robert and Verlene Johnston own Block (lot) 2. Eight lots each are located on either side of Johnston Lane, previously known as Satsuma Avenue. *Page 756 
The plat of Shoub's Second Addition to Mobile Heights, recorded in the Probate Office of Mobile County in 1914, at page 93, Deed Book 156, shows the subdivision, as dedicated at that time, with lot dimensions of 330 feet by 640 feet and Satsuma Avenue (now Johnston Lane) to be a street 40 feet in width. It appears as follows:
[EDITORS' NOTE: SKETCH IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 757 
The Rester survey allocates a portion of the excess acreage in Section 29 to the subdivision and enlarges the lots from a minimum width of 333.16 feet to a maximum of 333.56 feet; from a minimum length of 651.43 feet to a maximum of 659.44 feet. In contrast to Shoub's Second Addition plat, those lots and the street in the subdivision, by Rester's reallocation, appear as shown here:
[EDITORS' NOTE: SKETCH IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 758 
The trial court made a part of its decree a sketch (not to scale) of the prorated enlargement of Section 29:
[EDITORS' NOTE: SKETCH IS ELECTRONICALLY NON-TRANSFERRABLE.]
It is apparent, from the above, the size of the parcels of each owner of every parcel in each quarter-quarter of the section has been affected to some extent.
As noted, the Rester survey was made a part of the amended final decree by reference. Also, in the decree, the trial court made an express declaration that it was not intended to adjudicate the rights of persons not parties to the proceedings. By adopting the Rester survey and the prorated enlargement of Section 29 the decree affects the lands in that Section: by apportionment and determining the correct location of Johnston Lane. Thus it, in fact, affects lands and rights of persons not parties to the proceeding.
A. Apportionment
The subdivision, embracing the lots of the parties to this action, consists of 16 lots; they contain excess acreage which, by *Page 759 
the decree, was apportioned on a prorated basis to each of them. This results in an increase in the width and length of each (333.16' min. to 333.56' max. and 651.43' min. to 659.44' max.; width and length respectively). It is obvious that in order to achieve this result, the established boundary lines of every lot must be moved. If excess acreage is to be properly apportioned it must be allocated among all the lots in the subdivision. Adams v. Wilson, 137 Ala. 632, 34 So. 831 (1903). The trial court erred, however, when it made the apportionment without having jurisdiction over the owners of, or those having an interest in, the remaining lots in the subdivision; assuming, without deciding, that apportionment was proper in this case. This is in accord with the generally accepted rule.Nitterauer v. Pulley, 401 Ill. 494, 82 N.E.2d 643 (1948); 11 C.J.S. Boundaries § 124, p. 739.
Express declaration in the decree of no intention to adjudicate the rights of those not parties to the action will not cure this error. The Rule 54, ARCP, provision for final judgment as to less than all the parties, or claims, in certain actions is not here applicable. The rights of less than all having an interest in each lot cannot be adjudicated because to do so involves matters in rem. In an action where the final decree affects title, ownership, or interest in real property each possessor of title, ownership or interest must be made a party to the action. Davis v. Burnette, 11 ABR 541 (December 30, 1976); Dews v. Peterson, 283 Ala. 650, 219 So.2d 903
(1969); Snodgrass v. Snodgrass, 212 Ala. 74, 101 So. 837
(1924); Rule 19, ARCP. Rendering final judgment without jurisdiction over those indispensable parties renders that judgment void.
The problem presented because of lack of parties is not contained within the other boundaries of the subdivision. The subdivision comprises the N 1/2 of SE 1/4 of Sect. 29, the ordinary regular dimensions of which are 1320' x 2640'. The excess increased the east boundary to 1358.88', the west to 1342.86 feet, the north to 2668.5 feet, and the south to 2665.24 feet. This results in moving boundaries of the N 1/2 of SE 1/4, encroaching upon property to the North, to the South and to the West. Without knowing, we assume the East line could not be moved further east because the right-of-way of the paved public road took the excess to the East when the easement was obtained for its construction. The owners of that property to the North, to the South, and to the West, upon which the newly established boundary lines impinge, are proper and indispensable parties to this action and must be joined if the decree is not to be void. This is for the same reasons, upon the same authority cited, requiring joinder of all property owners in the subdivision.
There remains for discussion all remaining property in Section 29, affected by including in the decree the surveyor's sketch of the prorated enlargement of the entire Section. Ordinarily, a regular Section measures 5280' by 5280'; the decree here increases the North Section line to 5350.59', the South to 5324.17', the East to 5435.51', and the West to 5307.43'. The concomitant enlargement of each and every quarter-quarter in Section 29, and movement or displacement of pertinent boundary lines, also requires joinder of every owner of all affected property in that Section. In addition, the movement of Section lines of Section 29 to accommodate the enlargement causes encroachment upon property in Sections: 20 to the North; 19 to the Northwest; 32 to the South; 30 to the West, and 31 to the Southwest. We cannot know, from the record, what effect, if any, results to the West boundary lines of Sections 21, 28, and 33; we can only speculate about the West boundary of N 1/2 of SW 1/4 of Section 28.
B. Location of Johnston Lane
(Satsuma Ave.)
The evidence about the existence and location of Johnston Lane is confusing and somewhat deceptive. It, described as Satsuma Avenue, appears on the 1914 recorded plat as a 40 foot right-of-way, 20 feet to the North and to the South of, and extending *Page 760 
along the East-West center line of the subdivision. It was never physically located there. Instead, the County of Mobile, the City of Mobile's predecessor in title to it, constructed a dirt road beginning on the eastern edge of the subdivision, a short distance to the North of the northern boundary of platted Satsuma Avenue, and running approximately 600 feet in a northwesterly direction at an angle to the right-of-way as shown on surveys of the tract. The right-of-way of Satsuma Avenue shown on the 1914 plat, and on the Rester Survey as Johnston Lane, serves as the southern boundary line of lots 9-16 and as the northern one of lots 1-8. By its final decree, the trial court correctly determined that Johnston Lane, as it actually exists on the ground, is not in its correct location; rather it found the correct location of the road to be as shown on Rester's survey, which is 75 feet from the existing roadway. Also, Rester's survey places Johnston Lane in a different location than did the original 1914 survey, necessarily, since Rester took into account outsized Section 29.
The 1914 plat places the North line of Johnston Lane 640 feet south of the original North line of the N 1/2 of SE 1/4 of Section 29 (the subdivision), and places the South line of Johnston Lane 640 feet to the North of the original South line of N 1/2 and SE 1/4 of Section 29. The Rester survey places the North line of Johnston Lane from a minimum of 651.43 feet to a maximum of 659.44 feet to the South of the newly established North line of the subdivision, and places the southern line of the street from a minimum of 651.43 feet to a maximum of 659.44 feet to the north of the newly established southern line of the subdivision. In the 1914 survey, the street is 2650 feet in length, East to West. The Rester survey extends the distance along the North line of it to 2666.90' and that of the South line of it to 2666.81'. In both, the street remains 40 feet in width.
The record does not tell us the precise nature of the title or interest the City of Mobile holds to Johnston Lane. Some of the rights, title, and interests of abutting lot owners in, and to, streets dedicated to public use; and some of the rights, title, powers and obligations of municipalities as to their streets are discussed and defined in: McCraney v. City ofLeeds, 239 Ala. 143, 194 So. 151 (1940); Thetford v. Town ofCloverdale, 217 Ala. 241, 115 So. 165 (1927); City ofMontgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117
(1919). A city has extensive power to control and regulate the use of its streets as the above authorities show. The City of Mobile has no less interest in the outcome of an action involving the true location of Johnston Lane than any of the property owners in the subdivision.
If, as the record indicates, the City is exercising authority over a strip of land not actually dedicated to use as a public street, then any decree that finds to that effect, expressly or by implication, is void if the City is not a party to this action. In any event, the interest of the City is of such a nature that the court decree `relocating' the road directly affects that interest and the trial court must have jurisdiction over the City before proceeding to adjudicate any issues affecting such interest.
Since the threshold questions here involve jurisdiction over parties, it is not necessary to decide the merits of the issue of adverse possession raised by defendants. The evidence was heard ore tenus and the site visited by the trial court. Our review of the evidence discloses no palpable error sufficient to reverse on that issue. Barnett v. Millis, 286 Ala. 681,246 So.2d 78 (1971). However, other errors in the decree require reversal.
REVERSED AND REMANDED.
BLOODWORTH, JONES and BEATTY, JJ., and CATES, J. (sitting at the designation of the Chief Justice), concur. *Page 761