James and Willene Autery, Cecil and Barbara Buford, and William and Myrtle Pace (the "landowners") filed an action against Levi and Ella Welch and Alabama Sports Society, Inc. (the "buyers"). The landowners alleged that the buyers were allowing persons to hunt on the landowners' property, had shot at Autery's child, were wrongfully using the landowners' private road, and had wrongfully widened that road. The buyers filed a third-party complaint against Aronov Realty Company, Traywick Dickson, and Kenneth and Hazel Boles ("sellers"). That third-party complaint concerned the buyers' purchase from the sellers of approximately 47 acres of rural real estate in Autauga County and alleged, among other claims, that the sellers had breached a contract with the buyers to "convey proper access" to the property, because the sellers had allegedly represented that a road providing access to the property was a public road, when, instead, the road was private. The sellers filed a counterclaim against the buyers, seeking to recover $25,000 in insurance proceeds and punitive damages. The sellers state in their counterclaim that they held a purchase-money mortgage on the property and that, pursuant to the terms of *Page 960 
that mortgage, the buyers were required to maintain fire insurance for their benefit on a house on the property. The house burned, and the sellers and buyers jointly recovered $25,000 in insurance proceeds. Although the buyers allegedly agreed to rebuild the house with the insurance proceeds if the sellers would release their share of the proceeds to them, which the sellers did, the buyers never rebuilt the house.
The trial court ordered separate trials on the original complaint and on the third-party complaint and counterclaim. The court held a hearing on the original complaint and entered an order awarding the landowners nominal damages on various claims and holding "[t]hat the road in question is a private and not public road." Several months later, the buyers' third-party complaint and the sellers' counterclaim were tried, although Aronov and Dickson had already reached a pro tanto settlement of the case. The trial court entered an order that:
 1. Found in the buyers' favor on their "breach of contract claim regarding the road" and assessed damages against the sellers in the amount of $31,000, but provided that this amount would be reduced by the amount of the pro tanto settlement with Aronov and Dickson;
 2. Found in the buyers' favor on the sellers' counterclaim for the $25,000 proceeds, but provided that "in the event that Welch [buyer] does not pay Boles [seller] the amount due under the mortgage on the subject property, Boles shall be paid $25,000, said sum representing insurance proceeds. . . ."
The trial court entered a final judgment, and the sellers appeal.
The sellers argue that, pursuant to Rule 19, A.R.Civ.P., Autauga County should have been joined as a party to the action for the purpose of determining whether the road was public or private and, that, because the trial court's award of damages on the breach of contract claim was based on its prior finding that the road was private, the judgment against the sellers should be reversed. To support their argument, the sellers citeJohnston v. White-Spunner, 342 So.2d 754 (Ala. 1977). Johnston
involved a boundary line dispute between owners of contiguous lots in a subdivision. One of the issues concerned whether Johnston Lane was a public road or a private road, and another issue was the proper location of the lane. The appellants argued that the City of Mobile should have been joined as a party to the action. The Court wrote:
 "The record does not tell us the precise nature of the title or interest the City of Mobile holds to Johnston Lane. Some of the rights, title, and interests of abutting lot owners in, and to, streets dedicated to public use; and some of the rights, title, powers and obligations of municipalities as to their streets are discussed and defined in: McCraney v. City of Leeds, 239 Ala. 143, 194 So. 151 (1940); Thetford v. Town of Cloverdale, 217 Ala. 241, 115 So. 165 (1927); City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117 (1919). A city has extensive power to control and regulate the use of its streets as the above authorities show. The City of Mobile has no less interest in the outcome of an action involving the true location of Johnston Lane than any of the property owners in the subdivision.
 "If, as the record indicates, the City is exercising authority over a strip of land not actually dedicated to use as a public street, then any decree that finds to that effect, expressly or by implication, is void if the City is not a party to this action. In any event, the interest of the City is of such a nature that the court decree 'relocating' the road directly affects that interest and the trial court must have jurisdiction over the City before proceeding to adjudicate any issues affecting such interest."
342 So.2d at 760.
At the hearing to determine whether the road was public, Mr. Autery, one of the landowners, testified that the county had put pipe under the road, had put gravel on the road, had graded the road, and had generally maintained it. Present and former *Page 961 
county commissioners and commission employees also testified that the county had maintained the road since the late 1960's. Furthermore, evidence indicated that school buses and the postal service use the road, and that members of the public have used the road for 20 or 30 years. The Autauga County engineer testified that the county treated the road as a public road.
A public road may be vacated only with the consent of the governing body in whose jurisdiction the road lies. Ala. Code 1975, §§ 23-4-1, 23-4-20. "The county commissions of the several counties of this state have general superintendence of the public roads," § 23-1-80, and they have "authority in relation to the establishment, change or discontinuance of roads," § 11-3-10. Furthermore, a county may be liable to individuals injured because of its negligence in maintaining its roads. See, Jefferson County v. Sulzby, 468 So.2d 112
(Ala. 1985).
The trial court's determination of whether the road was public or was private might affect not only the rights of the individual litigants but also the rights of members of the public to use the road, the duty of the county to maintain it, and the liability of the county for failure to maintain it. If the county is not joined as a party, then neither it nor other members of the public are bound by the trial court's ruling. Accordingly, if the county and other persons are not bound, then the status of the road as public or private is subject to being litigated again, and the results of later litigation may be inconsistent with the results of the initial litigation. We note the following as a possible example: Suppose the landowners, over the course of time, allow the road to fall into disrepair, and a school bus carrying children has an accident because of the road's deterioration. Would the county be liable for its failure to maintain the road? Coupled with the other problems discussed, that possibility of contradictory rulings about the status of the road as public or private is a sufficient reason to require the joinder of Autauga County as a party. See also Johnston, supra. "The desirability of judicial economy must give way to the orderly administration and demands of justice," Mead Corp. v. City of Birmingham,350 So.2d 419 (Ala. 1977).
The landowners argue that Autauga County knew about this lawsuit because representatives of the county were witnesses at trial and that, accordingly, the joinder of the county as a party is unnecessary; the landowners state that "[t]he county engineer, tax assessor, and a member of the county commission were called as witnesses at trial with no indication of wanting to be made a party to the cause." That a witness is present in court and testifies in the proceedings does not necessarily mean that the witness should not be joined as a party. SeeDavis v. Burnette, 341 So.2d 118 (Ala. 1976). The presence of county employees as witnesses does not correct those problems caused by the failure to join Autauga County as a party; accordingly, the landowners' argument fails.
The landowners further argue that the joinder of Autauga County pursuant to Rule 19, A.R.Civ.P., would be unnecessary and improper under the Court of Civil Appeals' holding inGeer Brothers, Inc. v. Walker, 416 So.2d 1045
(Ala.Civ.App. 1982). In Geer, the court wrote that when a party was seeking only to protect itself with a Rule 19, A.R.Civ.P., argument, and was not seeking vicariously to protect the absent party against a prejudicial judgment, the court could consider the defendant's delay in seeking to have the party joined.Geer, at 1050. The landowners seem to be arguing either that the issue of joining Autauga County has not been preserved for review or else that the sellers, seeking only to protect themselves, waited too long to raise the issue.
The sellers first raised the issue in their post-trial motions. Failure to join an indispensable party is subject to review on appeal even if it is raised for the first time on appeal and even though the issue was not called to the attention of the trial court. Davis v. Burnette, supra, at 120. The sellers' issue, accordingly, was preserved for appeal.
Considering our prior discussion, we refuse to hold that the sellers were seeking *Page 962 
only to protect themselves when they raised the issue of the joinder of Autauga County pursuant to Rule 19, A.R.Civ.P. The determination of whether the road was public or was private was a determination related to the public interest and to Autauga County in particular, as we have discussed. Further, considering the entire record, we do not accept the landowners' argument that the sellers delayed too long to be able to raise the issue.
For the reasons previously discussed, we hold that Autauga County should have been joined as a party to the action determining whether the road was a public road. Because Autauga County was not joined as a party, and because the trial court's determination that the road was private was made a basis for the trial court's award of damages in the buyers' breach of contract action against the sellers, the judgment is due to be reversed as to the buyers' breach of contract action, and the cause remanded.
As to the sellers' counterclaim, the trial court wrote:
 "The Court finds the issues in favor of third-party plaintiffs and against third-party defendants Kenneth and Hazel Boles and Boles's counterclaim. However in the event that Welch does not pay Boles the amount due under the mortgage on the subject property, Boles shall be paid $25,000, said sum representing the insurance proceeds received by Welch for the purpose of reconstructing the house located on the property which burned."
The sellers argue that this judgment indicates that the "trial court recognized the sellers were entitled to the money" but that nevertheless "it refused to enter judgment for them." Apart from this conclusory statement, the sellers do not explain in any way what the trial court did that might constitute reversible error. As appellants, the sellers have the affirmative duty of showing error on the record. Smith v.Equifax Services, Inc., 537 So.2d 463, 465 (Ala. 1988). The sellers have shown nothing that constitutes reversible error in relation to their counterclaim and, accordingly, the judgment is due to be affirmed as to the Boleses' counterclaim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, SHORES and STEAGALL, JJ., concur.
HORNSBY, C.J., concurs in the result.