THOMAS, Judge.
Joel Newman and Brenda Newman appeal from a judgment entered by the Lauderdale Circuit Court ("the trial court") in favor of Skypark Properties, LLC ("Skypark"). We affirm the judgment in part, reverse it in part, and remand this cause for further proceedings consistent with this opinion.
Background
Skypark and the Newmans own adjacent parcels of real estate; the Newmans own the eastern parcel, and Skypark owns the western parcel. A public road, Skypark Drive, runs parallel to the southern borders of the parties' parcels. A strip of land that is described in the record as a "public right-of-way" ("the public right-of-way") is *727 situated between the southern borders of the parties' parcels and Skypark Drive.
In 2010, Skypark initiated an action ("the 2010 action") against the Newmans alleging that they had constructed certain improvements on their parcel that had encroached on its parcel; Skypark sought injunctive relief. In response, the Newmans alleged that they had adversely possessed a portion of Skypark's parcel. On May 24, 2011, the trial court entered a judgment in favor of the Newmans and attached to its judgment a September 8, 2010, survey ("the September 2010 survey") depicting the portion of Skypark's parcel that the Newmans had adversely possessed, as demarcated by a specified "possession line." The September 2010 survey had been performed by White, Lynn, Collins & Associates, Inc. ("WLC"), and was signed by Rick Collins. Although it did not specifically reference the public right-of-way, the trial court's judgment also determined that, in addition to their own parcel and the portion of Skypark's parcel that they had adversely possessed, the Newmans "own[ed] and possess[ed]" a roughly 325-square-foot portion of real property, the description of which was included in the judgment and, as is discussed later in this opinion, corresponds with the description of a portion of the public right-of-way that is southwardly adjacent to the Newmans' parcel. The trial court's judgment also specified that the Newmans' interest in the portion of the public right-of-way that they "own[ed] and possess[ed]" was "subject to any easements of record or easements existing on site."
Among other things, the trial court specifically found:
"In this case, there was sufficient evidence establishing the [Newmans'] actual possession of the disputed area for the required length of time. Among other things, there was testimony and photographs of landscaping, clearing, the cutting and removal of trees, and general maintenance by the [Newmans] throughout the disputed strip. In addition, there was evidence of the construction of a driveway, steps, concrete pad, the installation of a utility building in the disputed area in 1989 and 1990 as well as the construction of a portion of a two-story garage with a bath and recreational room sometime thereafter."
In October 2014, Skypark initiated a second action against the Newmans alleging that they had encroached upon its parcel beyond the new boundary line established in the 2010 action by constructing a fence and by removing "brush, debris, and trees." In its verified complaint, Skypark asserted claims of trespass, the tort of outrage, and negligence, the latter of which related to the Newmans' installation of the fence. Skypark sought compensatory damages, punitive damages, attorney fees, and costs and asked the trial court to order the Newmans to move the fence to the "possession line" established in the 2010 action.
The Newmans answered Skypark's complaint, asserting various defenses and a counterclaim under the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala. Code 1975 ("the ALAA"). Among the defenses set out in their answer was an assertion that Skypark's claims were barred by the doctrine of res judicata, claim preclusion, "and/or" issue preclusion. Skypark filed a reply to the Newmans' counterclaim.[1]
*728 In April 2015, Skypark filed a "motion for emergency relief" alleging that the Newmans had begun constructing a concrete walkway that further encroached upon its parcel beyond the fence that they had already allegedly constructed, and on May 4, 2015, the trial court conducted an evidentiary hearing regarding Skypark's motion; a transcript of the hearing is in the record.
At the hearing, Kelly Allen briefly testified. Allen said that he owned Skypark with his brother and his sister. Allen also testified that the parties' parcels had originally been platted out as part of a subdivision.
Skypark also called as a witness Ronny Wiggington, who is a land surveyor employed by Price and Ryder Engineering. Wiggington testified that he had been hired by Allen "to locate the corners where the judicial line had been set [in the 2010 action] ...." Wiggington testified extensively regarding the procedures he had used to determine the location of what, he said, is the boundary line between the parties' parcels. The overall takeaway from Wiggington's testimony, however, was that the Newmans had constructed a fence and other improvements that encroached upon Skypark's parcel.
When, during cross-examination, the Newmans' attorney presented Wiggington with the trial court's judgment in the 2010 action and questioned him regarding the property description set out therein, Wiggington said that the description referred to only real property that was "out in the right-of-way of the road." He elaborated: "[T]hat description only covers a portion of the deeded part of the settlement line, settlement area.... [F]rom the right-of-way to the edge of the pavement." Wiggington also testified regarding a particular concrete pad that, he said, had been constructed in the public right-of-way.
Brenda Newman also testified. She said that the Newmans had lived in the house located on their parcel for 17 years. Regarding the concrete pad noted above, she said that it had been in the same location since the Newmans had lived on their parcel. During cross-examination by Skypark's attorney, Brenda said that, since the 2010 action, the Newmans had been making efforts to "improve" their parcel and that, as part of that process, the concrete pad had been "resurfaced"; she said the "length" of the concrete pad had not changed. Brenda testified that the concrete pad abutted Skypark Drive.
Near the conclusion of the hearing, the trial-court judge stated, in relevant part:
"I'm granting the motion for emergency relief. And one thing that worked to Mr. Newman's advantage last time was my desire not to create waste, you know, he had built things that encroached, and he was awarded certain property by virtue of adverse possession because somebody allowed it to get built, et cetera, correct? I mean, I'm going back five years when we tried that but that was ....
"....
"That was the testimony....
"....
"... [I]f it ultimately concludes that that fence after all the parties have been through, I've been through, orders, prior stuff, if that fence is an inch over the line I'm going to have it removed.
"....
"What's over the line will be removed.
"....
"Nothing more, nothing less. And it appears to me from the survey and the maps that there are portions of it that are over the line so, I mean, either you're going to have to rescue that situation or I'm going to have that section of the fence removed and the footing that's *729 already out there and other stuff. So I'm just signaling to you now but I want to be right, you know? And Collins went out there. [WLC is] a respected surveying firm like Price Ryder is and Mr. Wiggington is, I mean, a respected firm. But if Mr. Collins testifies that that pin-that that's his pin, then that fence is over the line. I mean, it's just that simple.
"....
"I'm not interested in re-staking it. I want to know if that's his pin, is that where he placed the pin? If he put that pin right there, then that fence is over the line."
The trial court entered an order on May 7, 2015, that, among other things, required the Newmans to stop all construction near the disputed boundary line and ordered that the boundary line between the parties' parcels be verified by WLC.
On May 26, 2015, Skypark amended its complaint to include claims of conversion and nuisance, which were respectively based on, among other things, allegations that the Newmans had unlawfully cut down a tree and that the Newmans had "allowed or caused construction workers to discard construction debris onto [Skypark]'s property." The Newmans answered Skypark's amended complaint and later amended their answer. On March 25, 2016, Skypark filed a motion in which it also requested an award of attorney fees under the ALAA.
The trial court conducted another hearing on July 26, 2016, at which Rick Collins testified. Collins first testified regarding the September 2010 survey, which had been attached to the trial court's judgment in the 2010 action to demonstrate the new boundary line between the parties' parcels. The following exchange occurred between Skypark's attorney and Collins during direct examination:
"Q. Do you remember back before [Joel Newman] made some improvement[s] to his property, you were called out to do a survey, right?
"A. Well the first thing we ever did, we marked the west boundary line of [the Newmans'] property.
"Q. And when you marked the west boundary line did you discover that there was some encroachments past the western boundary line?
"A. Yes.
"Q. And as a result of that did you eventually at [Joel]'s direction draw and mark what he described and what showed up on your surveys-the previous surveys is a possession line as pointed out by [Joel]?
"A. We did but that exact-they needed a plot plan for the City Building Department and [the person] in charge of the building department asked us to do that and show a possession line because we knew all along that that was not the property line, yes.
"Q. Because [Joel] tried to permit it, it showed it over on a different lot than the one he owned, right?
"A. That's correct.
"Q. And when you identified that possession line on those previous surveys did you physically put any pins to mark that line?
"A. No, not on the plot plan.
"Q. Sometime later obviously you were asked to go back out and re-establish that boundary line which was identified on your earlier surveys as the possession line as pointed out by [Joel], in other words, what he was claiming he owned?
"A. I was asked by the Court.
*730 "Q. All right. Before that was that line ever established or any pins put in the ground out there?
"A. Not by my firm."
A July 22, 2011, survey ("the July 2011 survey") that had been performed by WLC was admitted as evidence. Collins testified that the trial court had ordered or requested that WLC set iron pins designating the new boundary line between the parties' parcels and that Collins had done so on July 22, 2011.[2] Collins testified that the July 2011 survey depicted the locations of the iron pins that WLC had set. He said that WLC had placed three pins in 2011 and that one pin was already existing on the northern portion of the boundary line.
Collins then testified regarding his inspection of the properties that he had undertaken in accordance with the trial court's May 7, 2015, order. A May 26, 2015, survey ("the May 2015 survey") was admitted as evidence. Collins testified that, when representatives of WLC inspected the boundary line in May 2015, one of the pins that WLC had placed in July 2011 was missing; he said: "Originally it was an iron pin. It was not there at this time because some construction had tore [it] down." WLC replaced the missing pin with a "PK nail and shiner." He described that as "a nail disc with [his] number stamped on it." Collins testified that concrete had been poured over the original location of the missing pin.
Based on the location of the pins that WLC had set in July 2011, Collins testified that several improvements from the Newmans' parcel had encroached upon Skypark's parcel. Specifically, he said that there were portions of concrete steps and portions of metal forms that the Newmans appeared to be planning to use for pouring a concrete sidewalk that crossed the boundary line. He also said that part of an air-conditioning unit that served the Newmans' garage and an edge of concrete supporting the garage crossed the boundary line. Finally, Collins testified that a portion of a wrought-iron fence that the Newmans had constructed crossed the boundary line.
Collins noted that metal forms constructed west of the boundary line and onto Skypark's parcel continued past the southern borders of the parties' parcels and abutted Skypark Drive. He explained: "Of course Skypark['s property] stops at the right-of-way[,] but we show it out to the edge of that." Collins testified that, to his knowledge, a private property owner cannot adversely possess a public right-of-way until after it has been vacated by the relevant governmental entity. Collins testified that he had discovered no such intent to vacate the public right-of-way in his research regarding the boundary line between the parties' parcels.
Collins said that, at some point, WLC had created a legal description of a portion of the public right-of-way. That area is depicted on the May 2015 survey. In essence, the May 2015 survey depicts, in addition to the parties' separate parcels, a quadrilateral section of the public right-of-way, the eastern border of which is an extension of the original boundary line between the parcels, the western border of *731 which is connected to the new boundary line that was established in the 2010 action, the southern border of which abuts Skypark Drive, and the northern border of which is the southern border of the portion of Skypark's original parcel that the Newmans acquired through adverse possession in the 2010 action. According to the May 2015 survey, a concrete pad had been constructed abutting Skypark Drive that was inside the public right-of-way but outside the southwest corner of the portion of the public right-of-way set out in the legal description.
The May 2015 survey also contains a box in the upper left-hand corner. Collins testified that the box shows an enlarged depiction of the areas where encroachments onto Skypark's parcel existed, which, he said, included an approximately four-foot length of wrought-iron fence. Although improvements or encroachments into the public right-of-way are visible on the May 2015 survey, the enlargement does not focus on improvements or encroachments into the public right-of-way, i.e., south of Skypark's parcel, but Collins testified that the wrought-iron fence extended roughly 20 additional feet toward the south, terminating at a concrete pad abutting Skypark Drive. That 20-foot length of fence, Collins said, was situated to the west of the western boundary of the portion of the public right-of-way described above.
During cross-examination, the Newmans' attorney presented Collins with the actual legal description of the portion of the public right-of-way noted above, which was attached to a survey that had been completed by WLC on May 3, 2011 ("the May 2011 survey"), i.e., before entry of the trial court's judgment in the 2010 action on May 24, 2011. The legal description was entitled: "property containing wood steps & concrete pad installed by [Joel Newman] inside platted right of way." When presented with a copy of the trial court's judgment in the 2010 action, Collins testified that the legal description of the roughly 325-square-foot portion of real property that the trial court determined the Newmans "own[ed] and possess[ed]" matched the legal description of the portion of the public right-of-way that had been attached to the May 2011 survey.
Regarding the apparent "discrepancy," as the Newmans' attorney put it, between the portion of the public right-of-way referenced in the May 2011 survey and its attached description and the purportedly same portion of the public right-of-way depicted on the May 2015 survey, i.e., that the former included the concrete pad abutting Skypark Drive and the latter excluded it, Collins testified: "I'm not sure that's the same concrete pad." The Newmans' attorney then asked Collins to assume that it was the same concrete pad, and Collins insisted that no discrepancy existed regarding the relevant boundary lines; he said that the concrete pad could have been inaccurately drawn or that its dimensions may have been incorrect. When presented again with a copy of the September 2010 survey and asked by Skypark's attorney why WLC had not depicted the Newmans' "possession line" as continuing southwardly past the southern border of what was then Skypark's parcel, Collins testified: "Because that's the right-of-way of the road."
Skypark also called as a witness Eric Hill, a county engineer who was employed by Lauderdale County. Hill testified that the county possessed the public right-of-way that abutted the southern border of the parties' parcels. He said that the county maintained the public right-of-way and that he had received no notice that the county's interest in the public right-of-way had been vacated. Had that occurred, Hill said, he would have been notified and the *732 county would have stopped maintaining it. Hill said that, to his knowledge, a private party could not adversely possess a public right-of-way unless it had been abandoned by the county.
Allen testified again. He said that the Newmans had cut "a tree ... down on [Skypark's] property." Allen testified that he did not know the type or value of the tree. He said that the Newmans had constructed the wrought-iron fence and had made various improvements to their parcel since the 2010 action, including, among other things, changing the concrete pad abutting Skypark Drive; he said that it was "larger .... [l]ength wise"-specifically, he said, extending further west into the public right-of-way. Allen said that the concrete pad had extended further than the trial court had allowed in the 2010 action.
Allen testified that Skypark had spent approximately $8,000 on attorney fees while litigating this action. He admitted that he had not witnessed the Newmans throwing debris onto Skypark's parcel; but, he said, the construction workers that the Newmans had hired had done so. Allen did not provide an estimate regarding the economic damage caused by the debris. Allen testified that he and Skypark's other owners had not discussed the economic damage caused by the Newmans' alleged encroachments, and that he could not estimate that damage, because their objective was removal of the encroachments, as opposed to obtaining money.
After Skypark rested its case-in-chief, the Newmans' attorney filed in open court a written motion for a judgment on partial findings under Rule 52, Ala. R. Civ. P., based on the doctrine of res judicata and, he said, Skypark's failure to present adequate evidence regarding damages. The trial-court judge handwrote the word "order" at the top of the right-hand margin of the Newmans' motion and wrote the word "denied" next to two paragraphs of the Newmans' motion; he also wrote the word "granted" next to the paragraph of the Newmans' motion that asserted: "Skypark has failed to produce any evidence that it, as a limited liability company, is capable of suffering injury for mental and emotional distress"-a point with which Skypark's attorney orally agreed. Regarding the other damages alleged by Skypark, the trial-court judge orally stated:
"I disagree with regards to the trespass or nuisance or whatever the claims or the vehicle being used to address the tree being cut, and I'm not saying I'm ruling one way or another, I'm allowing that thus far, you know, the trash and the trespass, the removal of the tree, that sort of thing."
Brenda Newman also testified again. She said that, when the Newmans began construction on the wrought-iron fence, they reviewed a survey, although she could not recall which one, to verify that the fence would not encroach onto Skypark's parcel. They did so, she said, by referring to the concrete pad that abutted Skypark Drive and by constructing the fence to the east of the edge of the concrete pad. The Newmans, Brenda said, had "always" viewed the boundary line between the parties' parcels as coinciding with the edge of the concrete pad.
She testified that, although the concrete pad had not been enlarged, "somebody that was pouring concrete did pour a big clump of concrete up there. It does extend-it may be that far[,] but you can tell it's just clumped concrete. It's not the pad. It's very obvious." Regarding individual items that may have crossed the boundary line between the parties' parcels, Brenda said that she had dropped things like potted plants or bags of dirt that would then roll from the Newmans' parcel onto Skypark's *733 parcel because of the steep terrain. She said that she would not retrieve such items because she did not want to be arrested for trespassing.
The trial did not conclude until many months later, specifically on May 23, 2017, at which time the Newmans called Corey Lowery to testify. In relevant part, Lowery testified that he had performed lawn maintenance for the Newmans since 2004. He said that, in the process of maintaining the "property line," he had cut a sapling because "[i]t was growing up and hitting [the Newmans'] garage." Lowery said that Joel Newman had instructed him to cut the tree down. Lowery said that the concrete pad had not been expanded.
The Newmans also called David Taschner to testify. Taschner testified that he had been responsible for installing the wrought-iron fence on the Newmans' parcel in 2013 and that he had been hired to construct a sidewalk next to the fence roughly one year later. He said that the Newmans had told him that the boundary line of their parcel coincided with the edge of the concrete pad, that he had reviewed the September 2010 survey and possibly a survey that had been conducted in 2011, and that he thought that the fence had been installed well within the Newmans' parcel.
On June 30, 2017, the trial court entered a judgment that provides, in its entirety:
"This case came before the Court on [Skypark]'s petition for injunctive relief, negligence, outrage, and trespass. The Court heard testimony ore tenus. Based on the evidence and testimony presented, the Court finds [that Skypark's] petition for injunctive relief is due to be GRANTED. The [Newmans] are ordered to remove any encroachments identified by the [May 2015] survey .... The [Newmans] are ordered to remove the portion of the fence encroaching onto [Skypark]'s property from the point the fence begins to encroach on [Skypark]'s property to the end of the fence nearest Skypark Drive shown by the [May 2015] survey .... All portions of the fence and all other encroachments shown on the [May 2015] survey ... shall be removed within thirty (30) days of date of this order. The [Newmans] are enjoined from erecting any further structures of any kind beyond the boundary line established in the [May 2015] survey ....
"The Court finds [that] the [Newmans] have trespassed or instructed others to trespass onto [Skypark]'s property.
"The Court finds [that] the [Newmans] have removed or caused to be removed a tree and other growth from [Skypark]'s property intentionally and deliberately, in spite of known boundary line markers, establishing [that] the [Newmans] were trespassing and removing items from [Skypark]'s property and/or causing or allowing construction debris to be discarded onto [Skypark]'s property.
"The Court finds [that] the [Newmans] have caused water runoff to be directed onto [Skypark]'s property and caused damage to [Skypark]'s property.
"The Court awards [Skypark] damages against the [Newmans] in the amount of $15,000.00 upon which due execution may issue."[3]
*734 The trial court attached to its judgment a copy of the May 2015 survey and the enlargement depicting the encroachments onto Skypark's parcel.
On July 28, 2017, the Newmans filed a postjudgment motion, arguing, among other things, that each aspect of the trial court's judgment was contrary to the law and the evidence presented, that Skypark's claims were barred by "the doctrine of res judicata or claim preclusion," and that the trial court had erred by denying their "motion for involuntary dismissal." The trial court entered an order on August 7, 2017, denying the Newmans' postjudgment motion. The Newmans filed a notice of appeal to the Alabama Supreme Court on September 14, 2017. The appeal was transferred to this court by our supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
After reviewing the record on appeal, we issued an order asking the parties to submit letter briefs addressing several questions regarding the issue whether any portion of the trial court's judgment in this action or its judgment in the 2010 action were void. In our order, we cited Boles v. Autery, 554 So.2d 959 (Ala. 1989), and Johnston v. White-Spunner, 342 So.2d 754 (Ala. 1977). Although the parties submitted letter briefs in response, neither specifically addressed the authority that we had cited.
Analysis
Before turning to the parties' appellate arguments, we first consider the issues outlined in our order requesting letter briefs.
"The absence of an indispensable party is a jurisdictional defect that renders the proceeding void. See Gilbert v. Nicholson, 845 So.2d 785, 790 (Ala. 2002). Although no party to this appeal has raised the issue of indispensable parties, the absence of an indispensable party can be raised for the first time on appeal by the appellate court ex mero motu, even if the parties failed to present the issue to the trial court. Id.
"Our supreme court has stated:
" 'Rule 19, Ala. R. Civ. P., provides for joinder of persons needed for just adjudication. Its purposes include the promotion of judicial efficiency and the final determination of litigation by including all parties directly interested in the controversy....
" '[The supreme court] has also held ... that in cases where the final judgment will affect ownership of an interest in real property, all parties claiming an interest in the real property must be joined.'
*735 " Byrd Cos. v. Smith, 591 So.2d 844, 846 (Ala. 1991) (citations omitted). See also Johnston v. White-Spunner, 342 So.2d 754 (Ala. 1977) (when a trial court is asked to determine property rights of property owners not before the court, the absent property owners are indispensable parties and any judgment entered in the absence of those parties is void)."
Allbritton v. Dawkins, 19 So.3d 241, 243-44 (Ala. Civ. App. 2009).
In Boles, 554 So.2d at 960-61, our supreme court provided the following relevant analysis regarding a dispute between the sellers and the buyers of real property that, among other things, involved the issue whether a road was public or private:
"The sellers argue that, pursuant to Rule 19, [Ala.] R. Civ. P., Autauga County should have been joined as a party to the action for the purpose of determining whether the road was public or private .... To support their argument, the sellers cite Johnston v. White-Spunner, 342 So.2d 754 (Ala. 1977). Johnston involved a boundary line dispute between owners of contiguous lots in a subdivision. One of the issues concerned whether Johnston Lane was a public road or a private road, and another issue was the proper location of the lane. The appellants argued that the City of Mobile should have been joined as a party to the action. The Court wrote:
" 'The record does not tell us the precise nature of the title or interest the City of Mobile holds to Johnston Lane.... A city has extensive power to control and regulate the use of its streets as the above authorities show. The City of Mobile has no less interest in the outcome of an action involving the true location of Johnston Lane than any of the property owners in the subdivision.
" 'If, as the record indicates, the City is exercising authority over a strip of land not actually dedicated to use as a public street, then any decree that finds to that effect, expressly or by implication, is void if the City is not a party to this action....'
" 342 So.2d at 760.
"... Present and former county commissioners and commission employees ... testified that the county had maintained the road since the late 1960's.... The Autauga County engineer testified that the county treated the road as a public road.
"A public road may be vacated only with the consent of the governing body in whose jurisdiction the road lies. Ala. Code 1975, §§ 23-4-1, 23-4-20. 'The county commissions of the several counties of this state have general superintendence of the public roads,' § 23-1-80, and they have 'authority in relation to the establishment, change or discontinuance of roads,' § 11-3-10[, Ala. Code 1975 ]. Furthermore, a county may be liable to individuals injured because of its negligence in maintaining its roads. See, Jefferson County v. Sulzby, 468 So.2d 112 (Ala. 1985).
"The trial court's determination of whether the road was public or was private might affect not only the rights of the individual litigants but also the rights of members of the public to use the road, the duty of the county to maintain it, and the liability of the county for failure to maintain it. If the county is not joined as a party, then neither it nor other members of the public are bound by the trial court's ruling. Accordingly, if the county and other persons are not bound, then the status of the road as public or private is subject to being litigated again, and the results of later litigation may be inconsistent with the *736 results of the initial litigation. We note the following as a possible example: Suppose the landowners, over the course of time, allow the road to fall into disrepair, and a school bus carrying children has an accident because of the road's deterioration. Would the county be liable for its failure to maintain the road? Coupled with the other problems discussed, that possibility of contradictory rulings about the status of the road as public or private is a sufficient reason to require the joinder of Autauga County as a party. See also Johnston, supra. 'The desirability of judicial economy must give way to the orderly administration and demands of justice,' Mead Corp. v. City of Birmingham, 350 So.2d 419 (Ala. 1977)."
The evidence presented in the hearings in this action make clear that the trial court's judgment in the 2010 action determined that the Newmans "own[ed] and possess[ed]" a portion of the public right-of-way. It is also undisputed that the relevant governmental entity, which, the record indicates, is Lauderdale County ("the county"), was not a party in the 2010 action. Although the parties agree in their letter briefs that any portion of a judgment that awards a private landowner a public right-of-way based on the doctrine of adverse possession is void, they argue that the trial court's judgment in the 2010 action is not void because the legal description of the portion of the public right-of-way set out in the judgment specified that the Newmans' interest was "subject to any easements of record or easements existing on site."
We disagree. As in Johnston, 342 So.2d at 760, the record in this case does not reveal the precise nature of the county's interest in the portion of the public right-of-way such that one could assess the effect of the trial court's judgment in the 2010 action on that interest. Moreover, as in Boles, 554 So.2d at 959, evidence was presented in this case regarding the county's duty to maintain the public right-of-way, which raises the considerations noted in the supreme court's analysis regarding the allocation of any future liability. The county was not joined as a party in the 2010 action, and the portion of the trial court's judgment in that action pertaining to the public right-of-way appears to be void. Id.
Of course, the appeal now before us was not taken from the trial court's judgment in the 2010 action. However, much of the evidence presented in this case focused on the Newmans' construction activity inside the public right-of-way, apparently based on their belief that they possessed a property interest therein. The trial court's June 30, 2017, judgment specifically addressed some of that activity, but the record indicates that some encroachments may remain in the public right-of-way.
Despite at least two separate actions litigating whether the Newmans, as private, adjacent landowners, possessed a property interest that would allow them to erect improvements on real property being held in trust for the public's benefit, including the construction of physical barriers, i.e., a wrought-iron fence, the county has not been afforded an opportunity to assert its interest in the public right-of-way in either action. We acknowledge that Hill, a county engineer, offered testimony in this action; however, "[t]hat a witness is present in court and testifies in the proceedings does not necessarily mean that the witness should not be joined as a party." Boles, 554 So.2d at 961 ; see also Allbritton, 19 So.3d at 244. We therefore reverse the portion of the trial court's judgment regarding encroachments related to the public right-of-way and remand this cause to allow joinder of the county as an indispensable party to these proceedings.
*737 See Bradley v. Scott, 238 So.3d 62, 66 (Ala. Civ. App. 2017).
We now address the Newmans' substantive appellate arguments regarding the trial court's judgment insofar as it addresses encroachments related to Skypark's parcel, albeit in a different order than set out in their appellate brief. The Newmans argue that the relief sought by Skypark in this action was barred by the doctrine of res judicata. In response, Skypark asserts: "Because all of the wrongs in the current litigation occurred after the conclusion of the previous litigation, neither res judicata nor issue preclusion applies to the facts of this case."
The Newmans' appellate brief indicates, however, that their argument is not actually directed toward the allegations supporting Skypark's individual claims; rather, the Newmans assert, it is based on their position that the trial court's judgment in this action created a new and different boundary line between the parties' parcels than that established in the 2010 action. In support of their argument, the Newmans cite, among other cases, Hicks v. Jackson County Commission, 990 So.2d 904, 910-11 (Ala. Civ. App. 2008), in which this court noted, in relevant part:
" 'The four essential elements of the doctrine of res judicata are:
" ' "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions. If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation."
" ' Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala. 1998). The doctrine of res judicata applies when a party attempts to relitigate the same cause of action that was previously litigated against the same defendant or attempts to relitigate a different claim not previously litigated but which arises out of the same evidence. Id. at 636-37.'
" In re Estate of Hudson, 887 So.2d 923, 927-28 (Ala. Civ. App. 2004)."
Based on the foregoing, the Newmans assert:
"It is evident that evidence as to the location of the boundary line between the Skypark property and the Newman property is required in order to sustain [Skypark's] complaint in this case just like the fixing of the location of the boundary line was required in [the] 2010 [action]."
We disagree. The evidence presented in the 2010 action is not contained in the record, but the trial court summarized the parties' allegations and the relevant evidence in its judgment in the 2010 action, which is in the record. Although the nature of the injunctive relief sought by Skypark in this action is the same as that sought in the 2010 action, i.e., that the Newmans' encroachments be removed, the evidence required to establish that encroachments existed is different. To support its allegations in the 2010 action, Skypark was required to present evidence specifying the location of the original boundary line between the parties' parcels and demonstrate that the Newmans had constructed encroachments beyond that boundary line. To support their allegations regarding adverse possession, the Newmans were required to establish a series of well-settled elements in the 2010 action. See Buckner v. Hosch, 987 So.2d 1149, 1151-52 (Ala. 2007) (summarizing the law regarding claims of adverse possession between coterminous landowners).
*738 To support its allegations in this action, Skypark was required to present evidence specifying the location of the new boundary line established by the trial court's judgment in the 2010 action, without reference to the doctrine of adverse possession or any alternative theory that would have further modified the boundary line between the parties' parcels. In other words, Skypark did not seek to change the boundary line established in the 2010 action by arguing that the Newmans had not actually adversely possessed the relevant real property or by relitigating issues that were decided in the 2010 action; instead, it sought to establish only the physical location of the new boundary line and to present evidence regarding its allegations of encroachment.
Thus, the Newmans' argument based on the doctrine of res judicata is actually a sufficiency-of-the-evidence argument in disguise, as is demonstrated by this statement from their appellate brief, which logically follows from their actual premise:
"[The b]oundary pins located and referred to in the [May] 2015 survey ordered by the Court were not placed on the ... boundary line [established in the 2010 action], were placed there after 2010, don't mark the boundary line as determined by the [trial] court in its ... judgment [entered in the 2010 action,] and th[at] judgment bars Skypark's current action."
The record, however, reveals that, in its May 7, 2015, order, the trial court instructed WLC to verify the boundary line established in the 2010 action-not an alternative boundary line. In accordance with that instruction, Collins testified, WLC had located certain pins that it had placed in 2011 that physically demarcated the boundary line established in the 2010 action. Although Collins said that one of the pins had been removed and had had to be replaced, his testimony indicated that the "PK nail and shiner" used to replace the missing pin were placed in the same location as the missing pin. Based on WLC's work, Collins determined which of the Newmans' improvements encroached past the boundary line established in the 2010 action, and those encroachments were depicted on the May 2015 survey.
The Newmans essentially argue that the trial court should have used different evidence to establish the boundary line, such as the edge of the concrete pad and "[t]he edge of the trees and vegetation." As our supreme court explained in Helms v. Powell, 514 So.2d 1025, 1025 (Ala. 1987), however:
"Our standard of review in boundary line disputes that are tried ore tenus is clear: 'When evidence is presented ore tenus in a boundary line dispute, the trial court's decree establishing the boundary is presumed to be correct and need only be supported by credible evidence.' Hodge v. Snider, 495 So.2d 539, 540 (Ala. 1986). 'A judgment of the trial court establishing a boundary line between coterminous landowners need not be supported by a great preponderance of the evidence; the judgment should be affirmed if, under any reasonable aspect of the case, the decree is supported by credible evidence.' Graham v. McKinney, 445 So.2d 892, 894 (Ala. 1984). Where the facts are disputed in boundary line cases, we uphold the trial court's findings unless they are palpably erroneous or manifestly unjust to do so. Duke v. Presnall, 447 So.2d 143 (Ala. 1983)."
The trial court's judgment in this action reveals no attempt to establish a new boundary line between the parties' parcels. The trial court's judgment was instead based on the evidence presented regarding the physical location of the boundary line *739 established in the 2010 action. The trial court's findings in that regard are presumed to be correct, and we see no reason to disturb them on appeal.
Finally, we consider the Newmans' argument that the trial court's award of $15,000 to Skypark as damages was unsupported by the evidence presented. One of the cases that the Newmans cite in support of their argument is Johnson v. Harrison, 404 So.2d 337, 340 (Ala. 1981), in which our supreme court explained, in relevant part:
"The rule has long been established that the party claiming damages has the burden of establishing the existence of and amount of those damages by competent evidence. Smith v. Richardson, 277 Ala. 389, 171 So.2d 96 (1965). The award of damages cannot be made upon speculation, and the plaintiff has the burden of offering evidence tending to show to the required degree, the amount of damages allegedly suffered. Great American Insurance Co. v. Railroad Furniture Salvage of Mobile, Inc., 276 Ala. 394, 162 So.2d 488 (1964)."
The Newmans point to Allen's testimony, in which he failed to estimate the economic damage caused by the Newmans' construction activity and specifically said that he and the other owners of Skypark were seeking only the removal of any encroachments instead of money damages caused by them.
In response, Skypark cites Allen's testimony regarding the $8,000 that Skypark had spent for attorney fees and the testimony presented regarding the Newmans' various trespasses, encroachments, and the removal of the tree that had been on Skypark's parcel. Skypark argues that the trial court's award of $15,000 could have been based, in part, on its claim under the ALAA. We are unpersuaded by that argument. In Pacific Enterprises Oil Co. (USA) v. Howell Petroleum Corp., 614 So.2d 409, 418 (Ala. 1993), our supreme court held that, when making an award of attorney fees under the ALAA, trial courts are required to, among other things, set out the grounds for the award in the record. The trial court's judgment in this case does not do so, and, therefore, we do not view its award of damages to Skypark as an award of attorney fees under the ALAA. Insofar as the trial court's award of damages was based on the other conduct noted by Skypark, we agree with the Newmans that no evidence was presented regarding the amount of damages. See Johnson, 404 So.2d at 340.
We note, however, that the trial court specifically found that the Newmans had committed trespass and that sufficient evidence was presented to support that finding. "In the absence of actual damage to property resulting from a trespass, the owner of the property is entitled to nominal damages." Johnson v. Martin, 423 So.2d 868, 870 (Ala. Civ. App. 1982) (citing Foust v. Kinney, 202 Ala. 392, 80 So. 474 (1918) ). We therefore reverse the trial court's judgment insofar as it awards $15,000 in damages, and we remand the action for the trial court to enter a nominal award of damages that is consistent with the evidence presented.
In conclusion, we affirm the portion of the trial court's judgment ordering the removal of the Newmans' improvements that encroached onto Skypark's parcel beyond the boundary line established in the 2010 action. We reverse the portions of the trial court's judgment regarding the Newmans' construction activity in the public right-of-way and its award of damages to Skypark, and we remand this cause for the county to be joined as an indispensable party to these proceedings and for the trial court to enter a damages award on Skypark's *740 trespass claim that is consistent with the evidence presented.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

At some point, Skypark also sought criminal charges in the Lauderdale District Court against Joel Newman for his alleged trespass upon Skypark's parcel and his alleged illegal cutting of timber on Skypark's parcel. The record contains several filings and orders from the criminal action, although the exact disposition of those charges is not clear.

As already noted, the record indicates that the trial court's judgment in the 2010 action was entered on May 24, 2011, and that judgment did not specifically order WLC to place iron pins designating the new boundary line between the parties' parcels. Assuming that the trial court did in fact order that WLC do so, which is far from certain based on other statements in the record, it is unclear when or how the trial court issued such an order, but that directive may have been the result of postjudgment motions filed by the parties in the 2010 action or perhaps even an entirely separate action that is not mentioned in the record.

"An appeal ordinarily will lie only from a final judgment-i.e., one that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved." Bean v. Craig, 557 So.2d 1249, 1253 (Ala. 1990). In its complaint, Skypark included a request for injunctive relief and claims of negligence, the tort of outrage, and trespass. In its amended complaint, Skypark included claims of conversion and nuisance. The trial court granted the Newmans' Rule 52, Ala. R. Civ. P., motion regarding Skypark's tort-of-outrage claim. Skypark's request for injunctive relief is disposed of in the first paragraph of the trial court's judgment. The trial court's judgment also finds that the Newmans unlawfully installed portions of their fence on Skypark's parcel and awards damages, which was the basis of Skypark's negligence claim. Although it does not specifically mention Skypark's conversion and nuisance claims, the third paragraph of the trial court's judgment resolves the allegations supporting those claims. Finally, although all the parties asserted claims under the ALAA during the pendency of this action, the trial court's judgment, as is discussed in more detail later in this opinion, did not resolve those claims and did not specifically reserve jurisdiction to do so. Those claims were therefore implicitly denied. See Klinger v. Ros, 33 So.3d 1258, 1260 (Ala. Civ. App. 2009) ("Our supreme court has held that, when a trial court enters an otherwise final judgment on the merits of a case but fails to address a pending ALAA claim or to reserve jurisdiction to later consider that claim, the ALAA claim is implicitly denied by the judgment on the merits."). The trial court's judgment was therefore final and appealable.